# IN THE TENTH CIRCUIT COURT OF APPEALS

## No. 26-4000

## District of Utah Case No. 2:25-cv-674-DAK (D.Utah)

District Court Judge: Hon. Dale Kimball

ON APPEAL, PETITION DIRECTED PRIMARILY TO A DISTRICT COURT JUDGE

WITH SUPPLEMENTAL ELEMENTS OF A COLLATERAL APPEAL

FOR REPEATED CAUSES OF APPEAL FROM FRAUD ON THE COURT

*In re Carlos Velasquez, Pro Se v. Hon. Dale Kimball*

Respecting *Velasquez v. Amazon.com Services LLC*

# CERTIFICATE OF MAILING

The Appellant's Brief is served by mail to all of the following parties, I certify that I retain Proof of Mailing.

**Amazon.com Services LLC**

Brian D. Tuttle

LITTLER MENDELSON

222 Main St. 5ᵗᵗʰ Floor

Salt Lake City, UT 84101

801-401-8312

Email: btuttle@littler.com

*Bar Number: 16974*

Ethan D. Thomas

LITTLER MENDELSON PC

8474 Rozita Lee Ave Ste 200

Las Vegas, NV 89113

702-862-8800

Email: edthomas@littler.com

*Bar Number: 15751*

**U.S. Courts**

Senior Judge Dale Kimball

Orrin G. Hatch United States Courthouse

351 South West Temple, Rm. 10.400 (Chambers)

Salt Lake City, Utah 84101

801-524-6100

Signature of the Appellant with Date: _____

**Appellate Rule 28**

No Disclosure Statement is Required by this Party.

Rule 28.1(A)(2) is applied. All references to the record appear **emboldened, R.Vol.x.x-xxx;** the case record appears in two volumes as assembled by the District Court Clerk.

Rule 28.1(B)(3) is applied to demonstrate Fraud on the Court, in reference to Objections timely pleaded.

Rule 28.2(A)(1), in reference to pertinent written findings, dispositive issues are appended; however issues under Collateral Appeal have not been appended and should be briefed separately on the Court's interest in Justice. A Copy of a Judicial Decision rel. to a Fraud on the Court claim and Disqualification question is included.

Note, Rule 28.2(C)(1), the trial court Judge is treated as an adversary to the case in this context.

**Appellate Rule 32**

Rule 32(a), the document complies and is less than 13,000 words.

SIGNATURE

To the best of my knowledge, the Appellate Brief is a Principal Brief that complies with ordinary procedural standards for Pro Se filings in the Tenth Circuit Court of Appeals.

s/Carlos Velasquez_____

# TABLE OF CONTENTS

CERTIFICATE OF MAILING .................................................................................. i

CERTIFICATES OF COMPLIANCE ...................................................................... ii

TABLE OF CONTENTS ....................................................................................... iii

TABLE OF AUTHORITIES .................................................................................. vi

PREAMBLE AND JURISDICTION ....................................................................... 1

STATEMENT OF THE APPEAL WITH ISSUES PRESENTED AND CONCISE
STATEMENTS OF ARGUMENT ........................................................................... 4

CIRCUIT RECUSALS DUE ................................................................................. 13

PRIMARY FACTS OF THE CASE ON APPEAL NOT APPARENTLY IN DISPUTE AFTER
THE JUDICIAL DISPOSITION ........................................................................... 15

FACTS LEFT IN DISPUTE ON ALLEGATIONS OF JUDICIAL FRAUD IN THE DISTRICT
COURT ................................................................................................................ 16

THE FRAUD ON THE COURT ALLEGATION .................................................. 25

   1. Six False Judicial Declarations ................................................................. 25

   2. Perjury of the Judgment Standard, Criminal Design on Appellate Determination .......... 27

   3. False Judicial Testimony of the Constitution of the United States of America ............. 30

   4. Improper Disqualification Procedures to Covert Past District Court Fraud ............ 33

   5. Circuit Court Misstatement of Disqualification Questions ............................ 36

Constitutional Grounds ................................................................................................ 37

Past cases Unresolved on the Exclusivity of the Complaint, Fraud on the Court ............... 39

6.   Vexatious Pleading Standards from the Defendant Counsel............................................ 43

ARGUMENTS......................................................................................................................... 45

1.   The Actual Problem of Bias and Extrajudicial Source Construction............................... 45

2.   The Defendant Counsel was Vexatious (Fed. R. Civ. P. 11(c) .................................... 45

3.   Insolvent Judicial Expression .................................................................................... 46

4.   Pro Forma Judicial Malpractice  Can Be Cited in Read Review to be Fraud on the Court
     48

VICTIM'S POSITION............................................................................................................. 50

CONCLUSION........................................................................................................................ 56

ADDENDA

Exhibit No. 2, Initial Employment Offer.................................................................................002

Exhibit No. 30, Amazon Owner's Manual and Guide to Employment.............................007

U.S. Department of Justice, Criminal Resource Manual, CRM 1743. Perjury—Overview of 18
U.S.C. §1621 And 1623 Violations.................................................................................022

United States Code, 18 U.S.C. § 1001.................................................................................025

United States Code, 18 U.S.C. § 1621.................................................................................029

United States Code, 18 U.S.C. § 1623.................................................................................031

Judicial Order, Denying to Show Cause, No. 27.................................................................033

Judicial Order, Memorandum Granting Defendant's Motion to Dismiss with Declaration of Judgment, Nos. 36 and 37……………………..………………………………038

Judicial Order, Denying Relief from a Judgment, No. 44……………………………054

Circuit Order, Denying Jurisdiction of an Interlocutory Appeal, CA10 25-4145………..……057

Circuit Order, Denying Reconsideration, CA10 No. 25-4145…………………………060

Circuit Order, Subject to Disqualification and Fraud on the Court Review, CA10 No. 20-4087………………………………………………………………..064

TABLE OF AUTHORITIES

**Cases**

*Arnold v. United Airlines, Inc.,* CA7 Case No. 24-2179 (2025) ...........................................29

*Bell Atl. v. Twombly,* 550 U.S. 544 (2007) ...........................................8, 28

*Hazel-Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238 (1944) ...........................................49

*Iqbal v. Hasty,* 490 F.3d 143, 157 CA2 2007 ...........................................28

*Kellogg v. Watts Guerra LLP, 41 F.4th 1246, 1259 (10th Cir. 2022)* ...........................................38

*Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1499 (10th Cir. 1994)* ...................38

*Newsome v. McKesson Corp.,* 932 F.Supp. 1339, 1343 (D. Utah 1996) ...........................................21

*Odunze v. Lake Effect,* No. 2:24-cv-0341 (D. Utah, 2025) ...........................................22

*Price v. Philpot,* 420 F.3d 1158, 1167 n.9 (10th Cir. 2005)...........................................40

*Prince v. Bear Mut. Ins. Co.,* 56 P.3d 524, 536 (Utah 2002)...........................................22

*Rizvanovic v. Amazon.com Services LLC,* Dist. Court, ED CA 2024 ...........................................23

*Robbins v. Oklahoma,* 519 F.3d 1242 CA10 2008 ...........................................28

*Robinson v. Audi Aktiengesellschaft 56 F.3d 1259 (10th Cir. 1995)*...........................................49

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016) ...........................................20

*Sure-Tan, Inc. v. National Labor Relations Board,* 467 U.S. 883, 898 (1984)...........................................46

*Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1042 (2005) ...........................................29

**Statutes**

28 U.S. § 144 ...........................................13, 33

28 U.S. § 455 ...........................................33

**Rules**

Fed. R. Civ. P. 60(d) ..................................................................... 2, 44

**Constitutional Provisions**

U.S. Const. Amend. IX ................................................................. 6, 36

**Related Apellate Cases**

19-4041  Date  Filed:  03/22/2019  Date  Disposed:  06/11/2019  Disposition:  Affirmed

20-4087  Date  Filed:  08/20/2020  Date  Disposed:  04/26/2021  Disposition:  Affirmed

22-4098  Date  Filed:  10/19/2022  Date  Disposed:  06/20/2023  Disposition:  Affirmed

25-4145 Date Filed: 11/07/2025 Date Disposed: 11/19/2025 Disposition: Jurisdictional Defect

## PREAMBLE AND JURISDICTION

The Constitution of the United States of America has dedicated the government to the people without any politeian exception, and this includes relief from a judgment, and even a series of judgments, where Judiciary have not properly recused from questions demonstrating their own criminal Judicial Malpractice, add to that the instance of Appeal after a new Malpractice that was timely pre-empted after the Appellant filed an Affidavit showing Cause for Disqualification of the Jurist, the instance of improper declension from Recusal and a Motion that demonstrated there had been Fraud on the Court at Summary Judgment invoked by a vexatious Defendant Counsel who apparently pleaded directly against the observation of a negative Judicial Response to the Disqualification Affidavit, the case against a well-known American company for wrongful coerced resignation after an extended tenure, the Jurist refused to allow the Appellant to conduct Discovery after a pre-trial Motion to Dismiss was filed by the Defendant Counsel, the Jurist did not resolve timely Objections to the Motion to Dismiss, nor did the jurist resolve or recuse from a Motion demonstrating there was Fraud on the Court; in collateral terms, the case circumstance is one on improper impoundment of civil right by at least four times compounding District Court Malpractice with Appellate Court Malpractice, the Judge has abused procedures to repeatedly and improperly overrule substantive pleadings, doing extreme harm to the livelihood of the civil filer.

The Constitution of the United States of America so interpretable, Jurisdiction of Final Decisions of District Courts is plain under **28 U.S. § 1291**, questions of Fraud on the Court

have been reviewed in the Tenth Circuit without much success and those dispositions do not create a basis on which the Judiciary or the Defendant Counsel may object to the favorable action of Set Aside under Fed. R. Civ. P. 60(d) on Appeal.

Case review of Fraud on the Court demands an impartial judiciary will waive any presumption of Good Faith in the Jurist until the opinion reviewed is proven; if it cannot be proven it is duly Set Aside in the interests of popular Justice.

Additionally, past circumstances of Fraud on the Court, incidents of Judicial Malpractice, remain unresolved and contributed to the current disposition. Such questions can only invoke Section 1291, and the court will destroy Constitutional Law to provide that its rulings on finality of judgment apply here, they simply cannot reach that conclusion without Falsely Testifying the meaning and intent of the Constitution of the United States of America.

The Circuit Court's own membership is reviewable in context for Criminal Malpractice of intentional neglect to review substantive allegations of Fraud on the Court.

On Appeal we define plainly define Fraud on the Court, Fraud at Determination, this is called **Collateral Appeal,** the court take exception from Justice by abusing procedures under conditions of False Testimony (on even Constitutional interpretation), Perjury of the Statutory and Procedural Authority of the Issues in question, and False Declarations in the substantively corrupted testimony; questions in these instances provided nul tiel record.

A Preamble Approach and a complex theory of exclusivity are applied to limit the power of the judiciary in a cause beneficent to the People.

The Appeal intends to Set Aside the District Court Judgment for Fraud on the Court, order the District Court Judge is Disqualified, with a demand for Costs and Expenses at Delay.

The Appeal is intended on terms nul tiel record, this is Fraud on the Court review; the adversary herein is Judicial and has improperly abstracted the case; we do our best to recite the record for factuality of the case and the trial precedence.

Appeal is timely if this Brief is filed or postmarked before 3/14/26; the date of disposition in the District Court follows the last dispositive Motion, See Fed. R. App. P. 4, which was 12/16/25 that marked 30 days with which to file a Notice of Appeal, that was filed on 1/5/26.

# STATEMENT OF THE APPEAL WITH ISSUES PRESENTED

# AND CONCISE STATEMENTS OF ARGUMENT

The primary obstacle here is Judicial Malpractice, ordinary Read and Review practices in appellate courts suffer intentional misstatements of Constitutional Law.

Herein, the stare decisis has been subjected to False Testimony of the Constitution of the United States of America, meaning its applications are only properly interpreted to have been strictly conferential and insufficient to dismiss, comparative standards without substantive cleavage to the nature of the case. It was illegal to have dismissed it, and at every turn the court's language was improperly vexatious and treated a plain constitutional interpretation as anathema.

We present a complex allegation against a ministerial fraud who can be impeached, and criminally prosecuted, United States Courts may also be sued for criminal misconduct of the government at law.

We also attempt to be critically fair. Such component arguments can fill out a Fraud on the Court allegation against a District Court Judge, we review it as inchoate to claims consistent with the Constitution of the United States of America and the Public Law, rather than Common Law claims, like "abuse of discretion," and apply a three-tier civil construction:

False Testimony > Perjury > False Declarations[1]

---

[1] See Addenda, 022-031.

The Fraud on the Court rule effectively provides the reasoning that a Judge falsely testifying for United States on behalf of a U.S. Court does contemn himself, this is providable as a civil rememdy.

Common Law terms may arise in a separate or supplementary proceeding for actions against parties engaging in criminal misconduct beyond the privileges of the First Amendment, and the reasonability of defensive representation.

The process involved, we compare the approach of the United States Department of Justice (cit. omitted) and begin with the least claim of civil fraud in the Federal Issue, and work our way up. We admit that a single "false declaration" may not be interpretive fraud, ministerial fraud, fraud on U.S. Courts.

The difficulty for Appellate Review is on the corruption of stare decisis; lawyers have a tendency to present judicial testimony as sacred without plain demonstrations of constitutional formalism, so we are compelled to demonstrate preamble steps and are better than a strictly conferential approach.

This word "conferential" is part of critique inherent to the Constitution of the United States of America, one we charge Defendant Counsel, and Judiciary to adopt or refute; and not to demure.

Because the Federalist Papers define powers in terms of "conference" expressly Nos. 41-47, so when we interpret Constitutional expression of Law, we admit that the Preamble limits the power conferred on any branch agencies, this is concrete and authentic

interpretation; this approach we describe presently to be Concrete Originalism, the people *without exception.*

We also admit a profound restatement studious lawyers must have somewhere appreciated, the Constitution of the United States of America may restate "Law" as Conferential Formalism, and limits any and all overtures at Parliamentary Law otherwise; the term is sufficiently powerful to have revised law after the Magna Charta.

We call it Concrete Originalism, after the post-marxist overtures of Mikhail Bakhtin; we think Hamilton and Madison would have understood the term "Concrete" for its most natural definition, available in the eighteenth century, "Self-curing."

Under Concrete Originalism, we admit the most technical reasoning of the framers was capable to have conceptualized "Limited Government" in a Mathematico-Linguistic term, "The People," without the conferential or politeian Exception, because the exception from a limiting term defeats the integrity of the term. This was the argument implicated as held between Hamilton and Madison, and honored most expressly with the Ratification of U.S. Const. Amend. IX which admits any right not expressly defined falls to the people, this in fact includes NOT to suffer crimes in and under government, or civil society.

The politeian exception, even aristocratic mien, is consistent with criminal exception; the assault, rights by deprivation, are exceptions from an understated and evenly interpreted Civil Integral, the People as one, Some, and All. This is our entire analytical approach, and we admit that Parliamentary Legalism (Conferential Formalism) has made a gross invasion over the rights and standing of the People in terms of Limited Government, the Democratic-

6

Republicans do not appreciate the Elemental depth of this argument, but would argue that it is Consensus and not Methodological Discourse that defines Law: a point on which they are in error.

It is not law because lawyer writes it, it is a law that observes the exception is undue for the exceptionless cause of the people. A U.S. Judge did not ever require a law to observe and correct an undue civil exception; the intelligible Congress understood what was Necessary and Proper in such a ruling, and wrote an unambiguous Republican statute to standardize practice.

Mercantilist Exceptionalism has made plain invasions upon Constitutional Formalism, and exaggerates the literary authority of Historical Precedence, while abandoning analysis of Conditional Precedence; this is issues-oriented corruption reviewed to protect ordinary civil integrity of civil cases.

The allegation was put forward in the trial court that criminal statutes do not provide a Cause of Action, however this implicates only a lack of other supporting authorities within the record, such as criminal convictions or a criminal trial of some of the workplace tortfeasors as is consistent with some of the precedence for defining a Hostile Work Environment.

We do not proceed illiberally, the Defendant Counsel and the trial judge can both be interpreted to have intentionally pleaded and allowed Criminal Malpractice when it comes to adversary political conference, they generate an unlimited window for adversity; the application of such an original canon, Unlimited Adversity, asks literally whether the

7

substantive opinion does or does not arrest all claims, whether it provokes new ones, whether it makes an enemy of the People.

This approach renews the Constitutional authority of the Stare Decisis, abolishes strict conferential authority and corruption, because the Constitution of the United States of America abolishes an absolute and unreviewable privilege; the doctrine of res judicata evenly adopts this criticism within the compass of the court's high-level holdings, such as *Bell Atl. v. Twombly,* 550 U.S. 544 (2007); there is disagreement unresolved in the trial court on this standard leftover from those timely pleadings.

The Pre-Trial complaint detailed a dozen incidents of workplace stalking, harassments including false disciplinary statements and intentional neglect of ethics complaints that arrested the career opportunity of the Pro Se Appellant after nearly five years of gainful employment with the company; the Complaint frames it as Breach of Employment Contract because the stridency of Amazon.com Services LLC corporate Code of Conduct provides for review and even protection from abuses of and against the Code of Conduct, up to and including termination of the employment contract of an offending party; this is a point on mutual exclusivity of the contract which the trial court has falsely interpreted as an absolute privilege for the interpretation of its General Counsel, herein represented as having goaded ministerial fraud, as "in the best interests of Amazon." **See R.Vol.I.54.**

The Judicial Opinion has concluded the Employment Contract was non-binding, and released Amazon.com Services LLC from liability, and is postured to prevent the company for ever being sued for such a violation. **See R.Vol.II.234-5.**

This matter could be restated under ultra vires terms, however the Pre-trial complaint also framed the possibility the Amazon.com Services LLC may lack the requisite internal procedures. Such an allegations is ultra vires, that would admit they require a Federal Injunction to maintain their actual employment contracts against complex abuses of a Hostile Work Environment. Here, the Trial Court has said we cannot say or prove that Managers conducted "workplace stalking," and this appears to be a complex fraud because the prohibition of civil review of criminal statutes counterimplicates the broad Genuine Interest of the Federal Government; ultra vires questions could be included to an Amended Complaint post-Discovery, which was provisioned in the original Pre-trial Complaint.

The Judicial Opinion failed to weigh the Complaint on a Pre-trial question admitting a Preponderance of evidence could find the complaint plausible. Plausibility is defined on two fronts, (1) the record shows plain and critical disagreement between the victim/appellant and several managers over two years; (2) an ethics complaint record related to some disagreements shows the Human Resources agency in the company did not authenticate the written claims of corporate managers in actual terms of the Code of Conduct; the trial record proves corporate Intentional Neglect to exaggerate a plausibly hostile work environment and coerce resignation, HR did not do factual comparative analysis and allowed those several managers an Absolute Privilege to stalk and harass the complainant.

Ordinary parameters for wrongful coerced resignation are tried against a Hostile Work Environment, retaliatory behaviors, and intentional neglect of a contractual duty. **See R.Vol.1.14, ¶4-11.**

The court's prejudice is overbearing on several grounds; (1) The Judge did not recuse himself from a Disqualification question, and also did not resolve it; (2) A new Fraud on the Court allegation now stands where the Judge has diluted standards for review of Preponderance of the Evidence in a Pre-Trial phase; (3) The Defendant's Counsel appears to have pleaded vexatiously, and places the victim of a workplace stalking/constructive termination complaint at the mercy of an arbitrary and conferential prejudice before a plausibly corrupted jurist, in no way could have resolved the allegations.

The court's prejudice comes more clearly into focus as a matter of plain corruption; three other prior appeals provoked Fraud on the Court allegations which impacted the trial court on the Disqualification question.

The corrective reliefs require re-review of the Case No. CA10 25-4145 because the court refused to consider the question of Judicial Malpractice in light of the Disqualification Affidavit, and Judge Holmes' construction of that issue in fact threatens future Fraud at Determination because it has demured without reason from generating precedence that would leverage critical Discretionary Review on substantive questions for Disqualification,

the trial judge perjured against Disqualification statutes, and the Circuit Judge declared the court has general interest in that law.[2]

A court of appeals in its past and present admonitions for jurisprudence and clarity cannot falsely interpose partisan and conferential historical interpositions without generating a promissory harm; hence, we proceed here under the persistent threat of perjury.

Here, several appellate judges have in the past, and in direct relation to this case, invested themselves in Fraud at Determination. The abuses suffered by the complainant on the worksite between July 2021 and 2023 were concurrent with abuses in the District Court, and it is arguable that were it not for the Judicial Malpractice herein, in the several related cases, the Wrongful Construction Resignation lawsuit would not have arisen; the judiciary attempt to have tried the fate and livelihood of the Appellant over a course of years becomes instrumental ministerial fraud.

A Victim's Statement contained within this brief is emphatic they may resign because those delays in Justice have critically harmed other avenues of the victim's life, the task of a Pro Se petition should be short to mid-term planning, instead these dispositions are hyper-extended and improperly excoriating.

Our concern is the judiciary will commit fraud to evade the serious terms of this paper, and will perpetuate misstatements of the Constitution of the United States of America; it is not for us to arbitrate whether they violated the law because we have proven it.

---

[2] Addenda, 057, 060.

Any jurist who refuses to prosecute Fraud on the Court, who denies the simplicity of the terms of Criminal Malpractice in the Federal Officer, who refuses to allow the Constitution to govern his oath, may not preside in a case as this, as consistent with Thomas Jefferson's original rules for parliamentary practice under congressional convention, some jurist already dissents and cannot be impartial.

The Appeal seeks the following:

1. The Judgment of the District Court Set Aside for Fraud on the Court;

2. Evaluation in Collateral Order of Past Allegations of Fraud on the Court, incl. Separate Briefings on Supplemental Dockets to Assess the Court's Record of Judicial Malpractice in these several cases defined after the Disqualification Affidavit, Evaluation of Prejudicial Error on Dismissal of an interlocutory appeal, questions of the Clerk's Misconduct;

3. Censure of Defendant Counsel for pleading to a corrupted relief, basis for complaint to the Utah Bar Association;

4. Review of False Testimony on an Interlocutory Appeal;

5. Reimbursement of the Fee for False Disposition of an Interlocutory Appeal;

6. 4x Costs and Fees on Set Aside, against the Jurist.

CIRCUIT RECUSALS DUE

The following Circuit Judges may not preside for unresolved precedence of *fraud on the court,* the court's several opinions are alleged to be under disposition of *fraud at determination,* including the specific issue cited against Senior Judge Dale Kimball, the Circuit Court, Judges Baldock, Eid and Moritz conferred a criminal privilege of *fraud on the court* upon Hon. Mr. Kimball and now deceased Senior Judge Dee Benson.[3]

The Motion that obligated the Court to the Plaintiff was presented as cause for Recusal, the Circuit Court neglected the substantive motion in its Determination, and authored a whimsical perjury of rudimentary substance; they bear the direct *appearance of bias,* reviewing here they review a substantive allegation of *fraud on the court* and *fraud at determination* thereby.

The Circuit Judges listed below may not preside here because they would effectively as their own Judge on evaluation of the allegations of *fraud at determination* that is inherent to understanding review of the issue directed against the District Court Judge, review as partially directed against themselves, questions relevant to Collateral Order doctrine, as Hon. Mr. Kimball has; **28 U.S. § 144** protects the People and Jurist from the temptation and threat to commit *perjury* where *biased against the law.*

Moreover, repeated incidents of Ministerial Fraud do not permit the Judiciary presumptive Good Faith to even attempt to depose the issue because the United States Supreme Court

---

[3] See Addenda, 064.

has a politicized agenda, and may engage the same ministerial fraud on the high court's procedural neglects.

Issues Relevant:

1. **Case No. 25-4140** (D. UT Case No. 2:25-cv-00674-DAK)

   Jerome Holmes, Gregory Phillips, Richard Federico

2. **Case No. 22-4098** (D.UT Case No. 2:22-cv-00133-HCN-JCB)

   Robert Bacharach, Timothy Tymkovich, Veronica Rossman

3. **Case No. 20-4087** (D.UT Case No. 2:20-cv-00205-DB/DAK)

   Bobby Baldock, Nancy Moritz, Allison Eid

4. **Case No. 19-4041** (D.UT Case No. 2:18-cv-00728-DN)

   Paul Kelly, Carolyn McHugh, Nancy Moritz

# PRIMARY FACTS OF THE CASE ON APPEAL NOT APPARENTLY IN DISPUTE

# AFTER THE JUDICIAL DISPOSITION

1

The Appellant was an employee with Amazon.com Services LLC from 2018 to 2023. **See R.Vol.II.75-6.**

2

The Appellant was a Level 3 Supervisor with opportunity for promotion after 2021. **See R.Vol.II.75-6.**

3

The Appellant shows at least five disciplinary reports he claims contained false allegations, overbearing and undefined language, were the subject of immediate and critical disagreements.
**See R.Vol.II.75-6.**

4

The Appellant shows a series of HR complaints addressing those disciplinary reports, and email communications that did not do substantive [diligence] and confidence, HR was opaque.
**See R.Vol.II.75-6.**

## FACTS LEFT IN DISPUTE ON ALLEGATIONS

## OF JUDICIAL FRAUD IN THE DISTRICT COURT

5

HR intentionally neglected or failed to uphold the Code of Conduct[4] by conducting insufficient investigations into the nature of disciplinary reports, the substantive limits, allowed several managers an absolute privilege to write whatever they wanted. **See R.Vol.II.75-7.**

6

The plaintiff alleges workplace stalking and interference with his career, his At-Will contract by both Manager and HR, [were] parallel misconducts. **See R.Vol.II.75-7.**

7

All Amazon Associates are bound to the Code of Conduct and Leadership tenets, Amazon.com Services LLC, including Managers and HR, Leadership, is obligated to

---

[4] See Addenda 007, 012, 016, 018, Pre-Trial Exhibit No. 30, "Owner's Manual" defines At-Will Employment, Workplace Harassment and two categories of violations of Standards of Conduct, and a Code of Business Conduct and Ethics ("Code of Conduct"). The case standard admitted "Harassment" in terms of "Stalking," where the complainant had an advantageous and even lucrative position as a Level 3 Supervisor. **See R.Vol.II.14-17, esp. ¶7-8.**

16

uphold those standards. "In performing their job duties, Amazon employees should always act lawfully, ethically, and in the best interests of Amazon." **See R.Vol.II.75-7.**

8

The Plaintiff easily excelled at the job, and was stalked initially for differences in Leadership style, and apparent interpretation of the same contract. **See R.Vol.II.75-7.**

9

Amazon did not make "best efforts to discern the claims" brought. **See R.Vol.II.77 (Objection 1).** The Appellant properly directed the trial court, objecting to the Motion to Dismiss, to Exhibits 5,6,7,10, and 11 and related those to those Exhibits showing Ethics Complaints that were left unresolved. **See R.Vol.II.78.**

10

Defendant Counsel limits on *breach of contract* fail to regard the Code of Conduct to be an integral obligation to At-Will Employment on the part of the employer. **See R.Vol.II.78 (Objection 2).**

Restated from the record of Appellee's Motion to Dismiss how those standards presented attempting to define for the court a *breach of contract* were in fact conferential to merit the Appellant's withstanding against a Motion to Dismiss.

The Defendant Counsel sought to prevent the *former employee,* the worker, from interpreting the *Good Faith* terms of the Code of Conduct to be conditions of an Employment Contract, the observance of which would have prevented bad faith

17

disciplinary issues that defined a Hostile Work Environment, the workplace stalking/harassment condition the court has not developed.

Three standards of review were presented as being "conferential" in terms favoring the United States Judge would overrule the Motion to Dismiss properly.

11

Defendant Counsel shows insufficient basis to have evaluated a Hostile Work Environment. **R.Vol.II.79. (Objection 3)**

The circumstance appeared in the Defendant Counsel motion to be a plain misunderstanding of terms of *Multiple Sufficient Causes,* it came as a vexatious pleading that overlooked the disposition generated by Human Resources who was apparently charged with guaranteeing the contractual efficiency of the disciplinary complaints that prompted disagreement and outrage between the parties.

"Restatement of the Law, Third § 27, A number of justifications exist for the rule…A defendant whose tortious act was fully capable of causing the plaintiffs harm should not escape liability merely because of the fortuity of another sufficient cause." This objection came as the Defendant Counsel had mysteriously proved the Appellant could not necessarily prove a partial element, even though the Defendant cannot be exculpated in the same assessment.

The original paper of Objections in fact pleads for more Discovery opportunity.

Any kind of tortious conduct may be a factual cause, ¶36 of the Appellant's paper of Objections versus that motion emphasized *intentional neglect of duty* where a *criminal misconduct* of workplace stalking, intentional harassment by abuse of workplace policies and procedures admitted the provisional perimeter of several corporate officer's discretion was compromised for tortious misconduct.

The Judicial Opinion overlooks that any intentional or even unintentional *breach of contract* in terms of the corporate maintenance of its Code of Conduct does breach, and where persistent may observably define the Hostile Work Environment, the court's Jurisdiction could not be cited to err providing for Pre-trial Discovery processes.

Restated the Judicial Opinion is substantively defamatory. The Opinion does not address the Hostile Work Environment, and baselessly insists that it must not have been hostile; this beside the Defendant Counsel's insinuation of conceptual misunderstanding, given the austerity of his use of the word "misunderstanding," implicates nearly unspeakable incompetence on the part of the victim, it may even bear the insinuation of suicide as a formality of having been employed with the company while disagreeing with a United States Judge, such is an unconstitutional and even totalitarian innuendo inconsistent with professional standards of pleading representing a major international company with a household name and presence.

Reasonable people do not quit mid to long-term careers for minor misunderstandings; the job and any promotion would have secured badly needed home renovations, and improved conditions for the family.

The objection referred back to the original complaint; Read and Review was yet unresolved.

12

For action to dismiss, the Burden of Proof is upon the Defendant to prove the Plaintiff's factual causes were in error, or would produce ineffective results at trial. **R.Vol.II.81 (Objection 4).**

The Defendant Counsel pleading and the Judicial Opinion both show a divorce between *factual cause/multiple sufficient causes* and *injury in fact/concrete injury* and thus imply an intangible or non-real injury; they do not make any demonstration however, they simply abstract the rule and then refuse to synthesize the facts, they "undo" their adversary.

"Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as provided a basis for a lawsuit in American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). **R.Vol.II.82.**

Perhaps the repeated emotional distress of various *breach* could have appeared intangible if the Human Resources agency had done complex diligence, and shown greater respect for the actual Ethics Complaints; instead they were opaque so that the Appellant recognized they were in error at least upon the authority of those historical disciplinary issues.

*Wrongful Constructive resignation* depends upon the meaning of the question for *retaliatory behavior,* how shown "the employer intended or directed the act which caused

the emotional distress." *Newsome v. McKesson Corp.*, 932 F.Supp. 1339, 1343 (D. Utah 1996).

The Amazon Code of Conduct critically forbids any kind of behavioral retaliation, likely on the basis of cases like *Newsome.*

The Appellant in error, pre-trial claims insufficient, is a complicated discussion by this point because the trial process is early, and the factual relief of the case is underdeveloped. Exceptional standards in "but-for" terms of *injury at law* should not reduce the *stalking* allegation to one as either (a) without cause of action; or (b) insufficient, errant, intangible harm.

*Confidence* in employment is entirely critical, and violation of contractual confidence implicates the personal injury consistent with intentional harassment intended to drive a person out of some place or circumstance.

13

Corollary to Fact 12; Defendant Counsel's Test of Process was not demonstrated. **R.Vol.II.82 (Objection 5).**

Pleadings to reject the *Breach of Contract* term to focus solely on whether there was any *injury in fact* extrinsic from the workplace contract found the Defendant Counsel pleading for an extraordinary privilege to determine himself whether or not the company was liable, improperly restating the limits of the Code of Conduct under conferential expressions of authority.

The effect was to make it vague that it was plausible Amazon.com Services LLC could not be responsible for a comprehensive abuse of its own disciplinary practices, but that observation remained entirely understated and undefined in terms of *vicarious infliction of harm.*

The "best interests of Amazon" is a complex statement from the Code of Conduct directly admitting the authority of an Attorney of General Counsel will make corporate determinations, but in the circumstance of *wrongful constructive termination/resignation* claim the authority the court must be capable to put the Judgment against the company even against his or her own desire to defend the company from any lawsuit. This was consistent with *Odunze v. Lake Effect,* No. 2:24-cv-0341 (D. Utah, 2025) and *Prince v. Bear Mut. Ins. Co.,* 56 P.3d 524, 536 (Utah 2002).

14

Claims for Judgment and Dismissal were speculative. **R.Vol.II.83 (Objection 6).**

Clarifying, the Judicial Opinion does not admit the potential of the case in terms of tort, and could not demonstrate its reasoning to a reasonable party; the disposition relies entirely on a false portrayal of the complainant.

Contextually, that implication is accomplished under the Appellant's Objections paper at the point of Analysis and Summary, where objections grounded Read and Review under the *McDonnell Douglas* burden-shifting framework. **See R.Vol.II.83.**

We provoked a discussion of Judicial Exclusivity in terms of conditional precedence for standing ordinary Jurisdiction of the court, how pre-trial Motions to Dismiss may be governed in terms of plausibility, that was properly conferred on the court to Dismiss the Paper of Objections cit. *Rizvanovic v. Amazon.com Services LLC,* Dist. Court, ED CA 2024, where in this the Jurist apparently dissented from the Constitution of the United States of America and did not draw the reasonable inference that HR within the Pioneer region engaged several *intentional neglects* of standards of Ethics Complaints under . **See R.Vol.II.85.**

In reference to the compass of the Pre-trial complaint, those Reliefs implicated at generality and not at a point of finality, the Defendant did not raise specific defenses in light of evidence from within Amazon.com Services LLC; nothing exculpatory was presented.

This left the Judge with the heavy task of arbitrating whether or not the victim should admit the incidents in the workplace were truly injurious, a complex invasion of person and privilege to do potentially lasting traumatic harm by abuse of the court's presence and power.

Corporate misrepresentation against the Appellant as a more narrow revision of the Tort involves a seventh incident wherein another associate was implicated to the "stalking" behavior, how specifically misrepresented procedural decisions on the work site were abused within the hostile work environment context apart from defamatory statements.

The purpose of Judgment is not to arbitrate or "decide" the issue

Herein, the Judiciary and the Defendant Counsel knew they were improperly expediting dispositive review by arbitrating "causes," and abandoned themselves to overbearing and informal reasoning.

THE FRAUD ON THE COURT ALLEGATION

### 1. Six False Judicial Declarations

A formal motion entitled **Discretionary Review for Fraud on the Court** was filed on 12/15/25. **See R.Vol.II.184.**

Due to some ambiguity, a notice was presented to the court advising the filing was providable. **See R.Vol.II.175.**

The Motion demonstrates a Counter-Claim of "Fraud on the Court." **See R.Vol.II.185.**

The Motion demonstrates six false declarations.

False Declaration 1 **(See R.Vol.II.186)** reviews for the court, formally, how the Judicial opinion misstated the Amazon.com Services LLC' **Code of Conduct,** and refers back to a Paper of Objections timely filed when the Defendant Counsel had presented a Motion to Dismiss the case. **See Also R.Vol.II.77.**

False Declaration 2 **(See R.Vol.II.186)** reviews for the court, formally, how the Judicial opinion misstated the plaintiff's determinate Cause of Action; the Judicial Opinion misstates the providential argument on a "Hostile Work Environment" as pleaded critically on the paper of objections.

False Declaration 3 **(See R.Vol.II.187)** reviews for the court, formally, how an "At-Will" employee may enforce the Employment Contract by way of civil litigation after the form and manner of **Breach of Contract;** the complaint was emphatic how Article VI of the

Constitution of the United States of America provides for the Right to Make and Enforce Contracts.

False Declaration 3 **(See R.Vol.II.187.)** includes questions of Jurisdictional relevance from the Pre-Trial Complaint, See R.Vol.I.14. The Judicial Opinion failed to define how the "At-Will" contract could be prevented from enforcing the *Good Faith* terms on which the corporate associate has adopted the contract upon hiring; this is comparable approach to ultra vires doctrine, which is not in itself interpretable from the relevant tort law.

False Declaration 4 **(See R.Vol.II.187.)** reviews for the court, formally, how questions of false representations in corporate disciplinary reports was overruled on the Paper of Objections to the Defendant's Motion to Dismiss, how the Judge did not review the Complaint in a light favorable to the Appellant but only coveted his perjury on those terms. Restated, the facts defined in terms of Objections recognize that two incidents of management discipline were rejected by the Victim.

False Declaration 5 **(See R.Vol.II.188.)** reviews for the court, formally, how the Judicial Opinion does not state convincing standard for "outrageousness."

False Declaration 6 **(See R.Vol.II.188.)** reviews for the court, formally, how the judge errantly insisted the *wrongful coerced resignation* tort was not defined by any duty on the part of the Employer to the Employee in terms of the Code of Conduct.

## 2. Perjury of the Judgment Standard, Criminal Design on Appellate Determination

A District Court Judgment is a complex term of Exclusivity which governs the supplemental authority of the issue in the same binding terms; a Judgment composed of False Declarations, with no redeeming parts, is Perjury against Summary Judgment under the Federal Rules of Civil Procedure.

A "Legal Malice" standard does not exist properly showing Rule 60(d), presumptively because "Legal Malice" is far more consistent with Criminal Trial Proceedings wherein the Cause of Action for Relief from a Judgment may come under a Habeas Corpus Statute is no longer apparently Judge-made.

We certainly could not find any immediate or well-known standard of review at this law, so we state it plainly this is an original instance, and requires original interpretation, specifically a Preamble Approach that limits the power of the Judiciary to arbitrarily dismiss a case, especially a case where Disqualification was meritorious to the Court's Record.

This latter point on Merits is critical, it implies the classical Liberal notion of 'Grace,' whereas standards of Judicial Immunity, again the standard here has asked the District Court to look to *Twombly* and perhaps also to *Hall v. Bellmon* against Pro Se plaintiffs, we construe that these rulings must be overruled in a case of demonstrated Fraud on the Court because *Twombly* is being used to implicate Judicial Immunity improperly, and this is the

reason it can be considered "less than pellucid." *Robbins v. Oklahoma*, 519 F.3d 1242 CA10 2008, how maintained "conflicting signals" *Iqbal v. Hasty*, 490 F.3d 143, 157 CA2 2007.

The constructive suggestion under *Robbins,* "As best we understand it, however, the opinion seeks to find a middle ground between 'heightened fact pleading,' which is expressly rejected under *Twombly,* and burden-shifting requirements consistent with pre-trial standing under the *McDonnell-Douglas* Burden-Shifting framework.

Because "heightened fact pleading" compares an Appellate Standard of Review that may dismiss All or Part of any case because it was NOT pleaded the *Twombly* standard primes both the District and Appellate Court on prejudicial forecloture of prosecutorial failure of any kind.

This standard apparently fell directly against those facts restated from the Pre-Trial Complaint and defined above and misconstrued those as "heightened facts" while under a complex prejudicial disposition; again, it is difficult to describe for a corrupted court the precise manner of its corruption, but here we attempt to: Any action of Ministerial Fraud in its own right conflicts with "plausibility" either inherently, or extrinsically; in this case did completely abandon the substantive burden-shifting requirements.

It simply cannot simplify to a proper disposition of the case under Rule 12(b)(6) as is consistent with *twombly.*

We say it is Intrinsic Ministerial Fraud, "The most difficult question in interpreting *Twombly* is what the Court means by 'plausibility.' The Court states that the complaint must

contain 'enough facts to state a claim to relief that is plausible on its face.' But it reiterates the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Id.*

The *Twombly* debacle that implicates an unreasonable assessment of plausibility was pre-empted under Analysis and Summary after Objections. **See R.Vol.II.83-6.**

"Once a plaintiff satisfies its burden, the burdens shift to the defendant under the *McDonell Douglas* burden-shifting framework. Cf. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). Burden-shifting is elemental to *conditional exclusivity* ("but-for" constructions of *injury in fact* and *multiple sufficient causes*) under a term for Common Law tort claims, 'allowing courts skip the *McDonnell Douglas* prima facie analysis if the employer raises the employee's performance as the reason for the adverse employment decision' and go directly to pretext.' *Arnold v. United Airlines, Inc.*, CA7 Case No. 24-2179 (2025), in this way we narrow our speculative approach and allow the Philosophy of the Constitution of the United States of America breadth at interpretive pleadings and presentations for the Court." Id.

The implication here is that the Judicial Opinion reached a point to conclude any evaluation for the *preponderance* of the evidence, and the Judicial Testimony therein states a cause of "disagreement" with disciplinary papers, and Human Resources investigations, and fails to carry the meaning of intentional neglect of Ethics Complaints while the Hostile Work

Environment allegations, "workplace stalking," remain tangible from the record. **See R.Vol.II.184, 192, 212 (Pre-Trial Exhibits No'd. 13, 16, and 17).**

The reasoning in the Judicial Opinion at this point continues to be vague; overruling a burden-shifting requirement on implication compares the sua sponte approach to dismissal of the case literally for frivolous litigation that lacks substantivity and context outright; plausibility so construed demands a broken Rule of Law who, in our contemporary legal culture, errantly admits a statute has not been published on the subject.

In context, the pleading standards from the Defendant Counsel can be interpreted to be conferential, so the Judge appears to have overruled the actual possibility of a plausible civil claim which in itself is *not* appropriate to cases as *Arnold.* Restated, the opinion recited by the Defendant Counsel in fact favored the Plaintiff.

### 3. False Judicial Testimony of the Constitution of the United States of America

The Constitution of the United States of America is revolutionary, and in fact defined 'Populism,' as without politeian, parliamentary, or conferential exception.

In this way it entirely revolutionized government and law, so that the *government at law* is obligated to interpret its intent and meaning on the basis of *the people* without *exception* at all times.

There should be very few conferential exceptions in Constitutional Law of Elemental Populism; its public and forensic terms for representation of issues are formally limited to

conditions of one, some, and all; it was not ever intended interpreted on any kind of majority exception, including an adversarial condition.

Crime in this term is defined on the basis of the intolerable exception; the state of interpretation in the contemporary United States of America is so low largely due to Torey-inspired invasions of the authority of the Preamble.

The Constitution of the United States of America can evenly govern Political Science as well; there is Constitutional government and then there is more strictly conferential government. The disposition on the Iran state is an example of American disruption of a conferential government.

Herein, the Judicial officer is plausibly compromised the perimeter of his discretion on a past Fraud on the Court.

The Defendant Counsel has recognized the vulnerability in the case, has pleaded vexatiously, demanding from the court the Appellant has a profound misunderstanding of elements of legal representation, logical reasoning, and inferential reasoning.

In the Judicial Result, it is original ambiguation of conditions for plausibility that are used to actively dismiss the pre-trial complaint. There is no rejection or refutation of an indigent or vexatious party's broken argument, or a misunderstanding of terms.

Instead, the Judge appears to be *in conference* with the Defendant Counsel, any parties implicated or represented thereby, and was no longer impartial. Meaning, in the case of *Velasquez v. Amazon.com Services LLC* for wrongful constructive termination, the Judge

could not hear the matter as a public question under Article III, and instead evaded that authority often described to be Common Law; his conferential disposition may dismiss matters on ambiguity between 'Plausibility' and 'Judicial Consent,' neither observation may be governed on strictly conferential terms because the Federal Officer takes an exception from Justice against the victim of subtle and coverse harassment only detectable from review of the corporate record.

The judge neglects that exclusivity of the First Amendment protected civil case is a textual principal, it cannot be abstracted on an arbitrary basis.

The company may be liable on intentional neglect of its Code of Conduct alone, how the environment became 'hostile,' and then persisted in its hostility.

Other perspective could admit the approach of the case is simply too broad; if a corporate policy is to maintain confidence between employee-peers, and so never addresses substantive questions, nor conducts remedial review of past issues, then it is plausible a company could be vulnerable to fraud by a party simply applying too many issues. But we are not convinced such is the case here, it is not at all like a circumstance of Insurance fraud, nor did the Judicial Opinion ever plainly state it in terms better than "breadth."

The Judge himself may be in personal and professional denial of having generated a plainly hostile court within a close political conference between Judiciary on conditions of Republican exclusivity, wherein their conservative overtures are fake and improper.

We say we can define a False Testimony in any branch agency on these terms, and we can also prove how the Summary Judgment standard, the Issue on Order and Judgment of a United States District Court was perjured, and we can also refute False Declarations within any issue in view of a perjury, or without making that assessment.

This approach is consistent for Fraud on the Court review, Fraud at Determination, and even Fraud at Certification; it is requisite to protect the rights of parties at law, and when conducted correctly does not result in semantic errors that imperil the integrity of the Union, the pro forma Authority of the Branch Agency better than its mere Appearance.

In the absence of clearly defined precedence, the oathbound officer must use this approach, the people one, some, and all are a better term than a majority rule, and will not suffer improper exceptions for want of Reciprocity between Congress and the Judiciary, the People are a sufficient and profound agency.

**4. Improper Disqualification Procedures to Covert Past District Court Fraud**

Document 11, Plaintiff's Affidavit on Conditions of Recusal, was filed on 8/25/25, less than two weeks after the original filing date on 8/12/2025. **R.Vol.II.4.**

The document invokes the term of the Pro Se Affidavit for Disqualification of the Judge, his "Honorable Recusal," restating 28 U.S. § 144, and affirms that application citing 28 U.S. § 455; defining after several causes how *bias of the judge* shows impairment of judicial *impartiality.*

The Affidavit defines three general causes, and then shows two narrow conclusive arguments. The document has appended to it the original motion defining Fraud on the Court.

Cause 1 defines a case in production since April 2024 which contains an allegation of "Fraud on the Court "wherein Judge Dale Kimball took Judicial Action to disfavor the plaintiff in Case No. 2:20-cv-205 (CA10 No.20-4087)…*Velasquez v. State of Utah, et al.,* alleging and defining how his honor did falsely testify upon certification of an appeal in bad faith. Citing to Document No. 40 on that record. **See R.Vol.II.5.**

Cause 2 returns to the same instance of *Fraud on the Court* related to *Velasquez v. Utah,* and admits the disposition in that was intentional to cause the victim, the same Pro Se Appellant, emotional distress, as fitting a generalized parameter of civil stalking and deprivation of right. **See R.Vol.II.6.**

In reference to Exhibit No. 17 on this most relevant Appeal, the case disposition was included on a corporate testimony by the victim as a partial explanation for increased difficulties on the job.

Hon. Mr. Kimball's action was contributory where a case was filed against him, and mistreated in the same way, aggravated the already hostile work environment, he presently disrespects the victim under complex conditions of False Testimony.

The Circuit Court never resolved the same Motion for Relief from the Judgement. Compare the substance of the Circuit Disposition against the withstanding Motion. **See R.Vol.II.4 and Addenda 064.**

Cause 3 cites to the Canon of Judicial Conduct, which bears continuity on questions for Disqualification and Recusal of a U.S. Judge, emphasizes a term of "impropriety" implicates the authority of the Public Law in terms of the Necessary and Proper Clause, the *Fraud on the Court* question is always a question of *criminal malpractice*. **See R.Vol.II.9.**

The Judge denied the motion on 10/8/25 without any grounds, points on which he has falsely claimed impartiality, "The sole basis for the recusal request appears to be the court has previously ruled against [the Appellant.]" **See R.Vol.II.61.** "It is well settled…that adverse rulings do not provide grounds for recusal."

A capricious attempt to countervene any objection, "The decision denied Mr. Velasquez's motion to proceed in forma pauperis on appeal, after the Honorable Dee Benson had dismissed Mr. Velasquez's case with prejudice. The Tenth Circuit later affirmed the court's dismissal of Mr. Velasquez's claims. Thus, there is no reason to recuse." See **R.Vol.II.62.**

The Judicial Opinions have abandoned procedural substantivity, there is no need to look at the facts of case, the complaints, because the procedure has already been effectuated.

The serious objection: the Fraud on the Court allegation remains unresolved on the present record, and the original circumstances of those several cases appended to the Docket.

The Judicial Opinion discussed the duty of the Judge "to sit" without invoking the Canon of Judicial Conduct, and held without demonstration how the Appellant had applied the Disqualification/Recusal standards "broadly."

The order denying Disqualification and Recusal on that basis is whimsical; the "duty to sit" would override technical demonstrations of Fraud on the Court; this party deserves complex relief from several false judgments, the judiciary show the most callow and depraved interests here.

Ordinarily, a prejudicial paper demonstrating a malpractice, a conflict of interest, any bias, may be reviewed by another member of the court.

## 5. Circuit Court Misstatement of Disqualification Questions

The following are unresolved, and have plain demonstrations on their record of False Judicial Declarations, Perjury against the exclusivity of the issue, and False Testimony of the Constitution of the United States of America.

The court must admit briefing on these subject-matter to maintain its oath.

The matter cannot be briefed without prompting and replies from the parties who are alleged to have committed malpractice.

The Defendants in all of the other cases were never compelled to respond.

<u>Constitutional Grounds</u>

Not fully briefed here; additional briefing is requested, the court should not abrogate procedures suggested by a Pro Se party merely because it would compromise of appearance of Good Faith in the Government.

For those not already committed to our Constitution, U.S. Const. Amend. IX admits an e converso rule restates the intent and meaning of the Constitution of the United States of America, how dedicated government must be to the People without politeian exception; admits any statute or subject matter not expressly defined is to the merit of the People.

Meaning, the Fraud on the Court rule, and the entire notion False Testimony of the Constitution of the United States of America in official issues are predicated on the Constitution itself. Denial in Read and Review on such an issue is patently unconstitutional.

The Amendment itself comes prior to the enactment of civil rights act plainly and fairly restates the Supreme Law without any convolution of its meaning and intent, reasonably people can only appreciate the government from this perspective and all other perspectives are illiberal and exceptional.

E converso, any of the people have any right not to governed by an act that was a crime, an action meets a civil definition of a crime, because it preserves people's integrity without exception.

This right is manifest and may define principal conditions of Judicial Independence and Exclusivity where actual corruption in the government must be observed plainly, and corrected.

The fake appearance of good conduct, an element of coversion, is not a sound basis to defend the dignity of individual judges or judicial opinions; who engage malpractice, such actions naturally destroy the constitutional government and create what we are describing is a conferential government.

We can defend this complex position on briefing, how the Judge misstated the Law, with originalist positivism corrective over some of the writing of Justice Storey who was a late parliamentary advocate for resolution against establishment of a "Bill of Rights" because it is unclear how such rights are first foremost, plain restatements of the Authority of the Supreme Law and are not strict conferential privileges.

1. ***In re Velasquez*, Case No. 25-4140 (D. UT Case No. 2:25-cv-00674-DAK)**

Jerome Holmes, Gregory Phillips, Richard Federico

**Summary:** The Judicial Summary of an Interlocutory Appeal which held as its partial object the demonstration of past Fraud on the Court, and Fraud at Determination; the Clerk objected to docketing the case matter under a Mandamus term on pre-trial review of a Notice of Appeal declaring an intent to file a Petition for Writ of Mandamus. The Circuit Court apparently terminated the right of a Collateral Appeal where Disqualification followed the plain demonstration of Fraud on the Court rel. to CA10 Case No. 20-4087.

The disqualification standard plainly required review of a past allegation that was not disclosed in the Circuit Court's opinion, there was Fraud at Determination in that incidence, the court impounded the civil rights of the party on an illicit term.

As if confused, Judge Jerome Holmes authored an opinion under *Kellogg v. Watts Guerra LLP, 41 F.4th 1246, 1259 (10th Cir. 2022); Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1499 (10th Cir. 1994),* holding how the court was not obligated to enforce the Disqualification standard on Appeal.

The Clerk in this instance prompted a non-critical objection that alerted the Circuit Judge to the potential exposure of Judicial Malpractice; even now their presence within the court is used to threaten the Right to Petition because any of them can mistreat the process once alerted to a threat to their political conference.

The opinion promises to foreclose all discretionary review without Due Process, it hold the Authority of the Appellate Court may demure from upholding the Public Law and the Constitution of the United States of America.

The ruling deprived the Pro Se Appellant of the right to Stay Proceedings, and review the Allegation.

Past cases Unresolved on the Exclusivity of the Complaint, Fraud on the Court

2. ***Velasquez v. Hon. Baldock, et al.*Case No. 22-4098** (D.UT Case No. 2:22-cv-00133-HCN-JCB)

39

Robert Bacharach, Timothy Tymkovich, Veronica Rossman

**Summary:** The Plaintiff's first attempt to liberate his civil right from the predisposition of intentional ministerial fraud, the Fraud on the Court circumstance as defined by the two cases below; the Appellant sued Judiciary for False Testimony of the Case and was rebuked severely by the court, who could not confer standing on the Appellant's Opening Complaint in the District Court, the same question of civil right unrestored and prejudicially foreclosed on an undemonstrated basis of frivolousness.

It was false declaration that effectively refused to confer standing on the Appellant. The Circuit Court affirming that judgment of the District Court, ignored the Appellate Brief and invaded the First Amendment right of the petitioner to conduct an independent evaluation for "Abuse Discretion," discretionary review, under *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005).

A limitation of "disagreement" with the court was never litigated, and violated the First Amendment Right to Set Aside a Judgment for Fraud on the Court: the court's ordinary practice on a Motion for Relief from the Judgment is to review this motion and not to invent a separate standard of review where the victim can no longer participate.

**See Appellate Case: 22-4098, Document: 010110875219, Date Filed: 06/20/2023.**

**See Also: 22-4098, Document 010110757904, Motion defining Fraud on the Court, R.586-642.**

### 3. *Velasquez v. State of Utah, et al.* Case No. 20-4087 (D.UT Case No. 2:20-cv-00205-DB/DAK)

Bobby Baldock, Nancy Moritz, Allison Eid

**Summary:** The matter wherein Disqualification became precedented against Judge Dale Kimball; the case is a revised complaint of a prior one wherein Judge Dee Benson, who first presided there, opined that the primary difference in the original complaint and the revised complaint were amendments to parties served the complaint; whereas there were complex disagreement between the Court's holdings on record, what the previous Judge had said, and what the Law of the Case actually dictates is valid in jurisdiction terms.

The primary case law clarifies the Original Jurisdiction of the District Court was not invaded upon the State Court Judgment, and provides leading precedence consistent with past opinions of the Supreme Court.

Judge Dee Benson committed Fraud on the Court, and then died of a brain tumor; Judge Dale Kimball was reassigned the matter, as if in memoriam authored the False Testimony of Bad Faith circumstance against the standing of the complainant to Appeal in Forma Pauperis.

A Fraud on the Court Motion was filed timely on 5/8/2020, Doc. No. 20 from the District Court Docket. The Circuit Court's Summary does not address it, while the Appellate Brief in fact deposed the District Court Judge who pre-empted Replies and Due Process from those Defendants.

4. *Velasquez v. State of Utah, et al.*, Case No. 19-4041 (D.UT Case No. 2:18-cv-00728-DN)

Paul Kelly, Carolyn McHugh, Nancy Moritz

**Summary:** The Original case matter where the complainant admitted a technical error defected his District Court application, was dismissed prejudicially and without trial on all implied merits of the case.

The subject-matter is Rooker-Feldman doctrine in Law of the Case terms, a Motion requesting to amend the Complaint to show Jurisdiction was treated with vague malice. The Fraud on the Court application arose in the Circuit Court, and suffered a Fraud in Determination from Circuit Judge Paul Kelly, who falsely testified to United States Courts the plaintiff was intent to disagree with Rooker-Feldman doctrine.

### 6. Vexatious Pleading Standards from the Defendant Counsel

Not Briefed in its entirety. The Defendant Counsel applied itself to conferential standards of judicial review to falsely implicate the justiciability of dismissal; the original paper of objections (above) found those same standards were headless because they could not engage challenges under (1) Burden-Shifting; (2) Plausibility, they amounted to a cassation and disclaimer, the ghost of the case and the constitutional court with it.

This implicates a complex form of malpractice that abuses the interpretive relief due under the Appellate Rules of Federal Procedure, we demonstrate below how the Judge misstates "heightened facts pleading" standards whereall misstatements and mispleadings under the stare decisis bias the court to interpret the same question on preponderance as improperly elevated factual allegations, a very awkward computational result of *histrionics* which they foist against their victim.

The General Counsel from Amazon.com Services LLC effectively engaged in the same tort as was conducted by managers on *wrongful coercive resignation,* he sought to enlarge the injury against this party, and succeeded; likely he recognized the jurist had committed Perjury against the Disqualification standard, and sought to expand the compass of his corrupt political conference on the off-chance that it would misstate the Injustice and Field Pre-emption, which actually amounts to anathematic histrionic pleadings, corrupting themselves to destroy us.

This argument parallels the substance of Fact 11 above; General Counsel for Amazon.com Services LLC has sought to entrap the victim of workplace stalking within a corrupted U.S.

43

Court, the Jurist has endeavoured to gravely discredit the victim of Judicial Malpractice and now Workplace Stalking, through his own misunderstandings he disagreed with authority; it implicates a culture of coercion to commit suicide; certainly the Victim's statement within this document admits abuse of the presence of the court was herein used to do new and extreme harm under conditions consistent with the term, Judico-Criminal Conference.

No reasonable attorney could demonstrate the General Counsel's pleading standards were solvent; the fact is, overzealousness in defense of a party can amount to a crime and new civil tort if the court reaches a histrionic and strictly conferential result, and not a constitutional one.

The General Counsel for Amazon.com Services LLC must be censured as before Utah State Bar Association.

ARGUMENTS

As defined for the Record Above from a Motion for Relief from the Judgment for Fraud on the Court under Fed. R. Civ. P. 60(d); otherwise defined "Discretionary Review for Fraud on the Court," Trial Document No. 43. **See R.Vol.II.184.**

"We say that an important compositional rule exists in this case; a federal issue composed of *false declarations* is a *perjury* of the statutory or procerual authority of the issue. So a competent pleader here will demand the right to prove so many declarations were false, how the relevant issues was perjured, a testimony under colorable authority of the Constitution of the United States was a false testimony." **See R.Vol.II.185.**

**1. The Actual Problem of Bias and Extrajudicial Source Construction**

Those several facts of the case already demonstrated to be False Declarations, we admit there is room for further Briefing on the Subject of Disqualification, how the Jurist's testimony of Extrajudicial Source Construction misleads the congressional intent of the Disqualification statute; in context to the Motion the Judge is plainly observed to have abused the court's jurisdiction to commit crimes of False Testimony, Perjury, and False Declaration. **See R.Vol.II.189-190.**

**2.      The Defendant Counsel was Vexatious (Fed. R. Civ. P. 11(c)**

The Defendant Counsel has not been able demonstrate its positions from evidence, so the paper demanding Relief from the Judgment under Discretionary review accused them misusing judicial rhetoric of formal *overstatement*. See **R.Vol.II.191.**

The Opinion from Judge Dale Kimball does not actually define the standards recited under authority of *Twombly;* the merits of "judicial experience" and "common sense" does not follow in the same order of the stare decisis, those factual allegations presented as summary declaration over the case factually merit the complainant and not the defendant.

*If* the jurist had allowed the matter to proceed through pre-trial discovery, it is possible some of the objections restated from the Motion for Discretionary Review could have been evaluated; but he held no exculpatory presentation.

The judicial opinion admits overhwhelming bias against the merits of burden-shifting requirements and summary judgment standards.

### 3. Insolvent Judicial Expression

"[Holding] the Code of Conduct does not define the At-Will Employment Contract to favor the Victim, which is what the order and the Defendant's pleaders have overstated, implicates an errant rational argument that a Federal Agency is required to confer public standing for the complaint. "…when it finds that an unfair labor practice has been committed, to issue an order requiring the violator to 'cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without backpay, as will effectuate policies' of the NLRA." *Cf. Sure-Tan, Inc. v. National Labor Relations Board,* 467 U.S. 883, 898 (1984). The judge appears to improperly hold the contract's lack of NLRA standing counter-implicates evaluation of a Code of Conduct, and compares this same argument against irrational pleaders under the EEOO and ADA." **See R.Vol.II.193-4.**

The role of Title VII evaluation in the Judicial Opinion is opaque; it appears to rule out an ordinary category of review sua sponte, and imitates a Judge attempting to accommodate some other pleader.

The Code of Conduct under review does not provide a de facto waiver of liability, nor does it allow that the company's HR can fail to review an Ethics Complaint, certainly not above reasonability; the District Court Judge did not apparently compare the substance of the Ethics Complaints to their Results from Exhibits, as was pointed out in the original paper of Objections at **R.Vol.II.72, 76 ¶s 21 and 22;** <u>this certainly been the subject of a hearing.</u>

The constructions compare a wrongfully or illiberally adapted version of the *Ellerth/Faragher* defense on some unforeseen trial variance, again one not provided. A recitation of the Law of Agency provides this perspective on the text, despite how those decisions are criticism's of a "supervisor's official acts," the comparison is not sufficiently close. **See R.Vol.II.195.**

The Judicial Opinion has issued a declamation, the injury was either not sufficient, or was a duly issued disciplinary statement; in making that declaration, the Judicial Opinion conducts Fraud in a term compares class field-preemption against Pro Se petitions; Judge Kimball gave full audience to the professional attorney whose reputation he values above the life of the complainant.

It can be argued Judge Kimball is in gross criminal contempt of United States Courts; any party has a right not to suffer that malpractice.

### 4. Pro Forma Judicial Malpractice

### Can Be Cited in Read Review to be Fraud on the Court

It was Fraud on the Court,

(a) The Standard of Review was composed of six False Declarations, no one of those declarations as reviewed above was a true Statement of the Case;

(b) The Summary Judgment Standard was thereby Perjured, and may constitute one Civil or Criminal Count;

(c) Any Statutory Issue that was the subject of such a Perjury may be Set Aside for Fraud on the Court, in terms consistent with Relief from a Judgment, incl. Disposition of Motions with a Statutory Affect;

(d) The Judicial Testimony of the case was False Testimony of the meaning and intent of the Constitution of the United States of America, in terms of the timely objections and the timely motion for Discretionary (reviewed above) the Judicial Testimony does not carry the Complaint in its pre-trial format, the tort of wrongful coerced resignation under conditions of hostile work environment after defamatory abuse of disciplinary reports, intentional neglect to review those disciplinary reports and otherwise have upheld the employment contract, nor did the Defendant's exculpate themselves demonstrably than speculatively;

(e) Additionally Further Discovery may allow for greater certitude in the court's prejudice, there is no merit in clarifying standards of review in a premature dismissal because the court's record is incomplete as was pleaded twice over in those relevant documents we have brought before the court.

This matter can tolerate further extrapolation on Tenth Circuit Standards such as *Robinson v. Audi Aktiengesellschaft 56 F.3d 1259* (10th Cir. 1995); *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944) where standards are either primarily conferential and may not define Constitutional terms of exclusivity as critically as we have already.

## VICTIM'S POSITION

Stated in the abstract; the Judiciary are, once again, advised of the extreme harms they are perpetrating against the civil party.

Most critically, these are five collateral appeals. The time required to petition independently should not be so demanding that an individual who plans a deviation from a course of education, or a delay in finding a new career, finds himself put out extraordinarily, as is the case with this party.

The matter regarding Amazon.com Services LLC arose as the Plaintiff took work with the company, and delayed matriculation in University after publication at the city college, to resolve the lawsuit independently and within a reasonable time frame; three to six months for pre-trial practice on a Constitutional and Family Law claim.

That speculative time period became a short career with Amazon, that was aggressively abused for unknown reasons; the Victim suspects the Judiciary by abuse of the court's presence, sensitized him to politicized stalking, consistent with Republican-led intimacy with political violence; as is consistent with political culture in the State of Colorado.

There are violent and near-violent episodes in the District of Utah Court, and there is politicized violence in the State of Colorado, which appears designed to threaten the Judiciary into criminal malpractice; they are not reporting their own psychological dispositions, and are precipitating seditious authority as a means of preventing constitutional insight into the Public Law.

We evenly suspect they will attempt harm and intimidate one another.

The victim has already demanded the resignation of the Court's Clerk for interfering with the Jurisdiction of the Interlocutory Appeal; objecting where collateral resolutions of final determinations are critical, and the court's prejudice must invoke its interlocutory authority at a level to compare discretionary review of past decisions.

Forecloture upon civil right in outrageous circumstances is violent, and communicates consent to do violence against the aggrieved party; it is abuse of the court's holistic presence, and no one of the jurists should preside any longer as a Federal Judge for the extreme harms committed in what amounts to an insolvent decisional practice in parliamentary judicial conference; to be clear, we observe practical legal conference separate from that defined under the Constitution of the United States of America: the majority resolution is not by definition popular, and that irony seeps into the victim's life to insinuate catastrophic harm at every errant authoritarian statement.

Family Law, the awards originally sought, the awards now due, and the monetary value otherwise of persistence at education, than as-temporary work, and the security of the job where it became a point of years-long dedication, where Judicial dispositions were sensitizing to political abuse outside of the court, all were necessary to afford a higher standard of living consistent with development of the family, and care for the aging, are now imperiled.

The Court's membership strangles the victim and family to force them to let go of Constitutional formalism; again, a reasonable person can print no other request than one for their resignation.

Moreover, the court has repeatedly disobeyed plain pleadings for expeditiousness where malpractice was a critical term; even now, it is apparent the court's membership will attempt to impose a procedural obstruction to Justice, one which they are in fact authorized to override because the measure of Fraud at Determination in the same order of Disqualification cannot be diluted without promising persistent and future criminal harms, promissory harm from the corrupted perimeter of judicial expression, on terms consistent with False Testimony of the COTUSA, Perjury of the Authoritative Issue, and False Declarations therein.

The court's record here must be excoriated, and the Judiciary misbehaving on criminal terms must admit they have risked liability, and their careers.

There are larger criticisms available which deserve to be heard; the Judiciary herein have misstated the entire measure and meaning of Constitutional Law, the people have any right, in terms of the Ninth Amendment, not to be governed under any criminal term.

It is apparent how they misstate whole elements of constitutional law for nearly a decade in aggressive criminal disruption against this party.

S/Carlos Velasquez, Affiant _____

## DEFENDANT'S ANTICIPATED POSITION

The Defendants have provided an extremely prejudicial representation of the Complaint, and we think this is an attorney strategy which implicates the credibility of the complainant and/or his written representation on terms which would view the complaint as informal; the Defendant Counsel sought to disfavor (in the parliamentary term) a Pre-Trial complaint as though it were a dispositive motion.

Above, we have compared the strategy to histrionics.

The Pre-trial complaint can begin to prove an Intentional Neglect at high-levels in Human Resources agency at Amazon.com Services LLC, and the Pre-trial does bear the potential implication that Amazon Human Resources agency lacks authoritative procedures for circumstances of intentional abuse of administrative procedures; the Defendant Counsel has not provided any summary of Amazon's internal review procedures, nor has there been demonstrated any agency record of theirs on the subject-matter.

The more time they take, the more likely evidence could be destroyed or lost. The Defendant Counsel is attempting to risk the credibility of the company against the plausible liability of U.S. Courts, and may be engaged in gross malpractice even on a Defensive Privilege.

The prejudicial allegation of "malpractice" to defend Civil Rights, the Rights of Workers to make and enforce both the putative and civil integrity of an employment contract should not meet raw and indefinite skepticism, but instead should turn out the most plain facts

without misstating Constitutional interpretation against indefinite revisions of a categorical approach.

We expect the Defendant Counsel will proceed vexatiously, and we will ask the court to censure them, and demand they limit their pleadings to justiciable terms.

## RELIEFS DEMANDED

The Record of the District Court is sufficiently strong from this party's perspective to resolve questions of pre-trial preponderance of the evidence in favor of the Appellant, this was the pre-trial decisional question.

1. The Judgment of the District Court Set Aside for Fraud on the Court, New Trial is Demanded;

2. 4x Costs and Fees on Set Aside including costs for Delays, against the District Court Malpracticant;

3. Review of Judicial Actions on a recent interlocutory Appeal;

4. Censure of Defense Counsel for Application of Complaint to State Bar Associations;

5. Evaluation in Collateral Order of those three cases precipitating the circumstance of Judicial Disqualification for unresolved questions of past Fraud on Court, Separate Briefings on those Original Records with 60 Days Time for Initial Filing, waiver of any filing fee.

The Court may Order Briefing from any Party served this document.

CONCLUSION

The Appellant herein has gone so far as to successfully defend the Constitution of the United States of America from criminal malpractice of ministerial fraud, whereas the Judicial Opinions and malpractices directed against this party and implicated into the measure of the outcome of the first round of *Velasquez v. Amazon.com Services LLC* appear as profound misstatements of the exclusivity of the Public Law.

The Judicial Opinions reads as a dissent from the Constitution of the United States of America;

(1) The Criminal Statute was not used a "Cause of Action," but was used a means to define (a) criminal misbehavior on the worksite; (b) conditions of a hostile work environment; the tort never alleged that it was a criminal prosecution, nor is Civil Circumstance ever restricted from evaluating conditions for a civil violation on those terms.

(2) The Judicial Opinion has elected to disbelieve the Victim's account, and has gravely attacked the Pro Se approach; the Defendant Counsel struggled to state any specific limit to the argument and simply refused to do the work of reading and comprehending the complaint; the U.S. Judge cannot logically, reasonably, and beneficently rule on subjects of law on a 'prejudicial confusion,' or 'prejudicial disbelief' whether or not based in his own personal liability for a past Fraud on the Court.

(3) The Public Law including the criminal code patently protects civil petitioners, this should not appear as a large analytical or logical step, because the criminal exception itself comes directly abreast of the civil case on official testimonial terms; a civilian should not suffer False Testimony, Perjury, and False Declarations in the official opinion or transaction, this is one of the essential presumptions of Limited Government that is properly dedicated to the People, to state that we have no cause of action versus a very strict parliamentary conference, one who does not hear criticism threatening to its agenda, is preposterous and in light of the contemporary Presidential administration compared the interposition of a death threat.

Certainly the succession of opaque lies which we have deposed in timely and critical order are described in no other way than Ministerial Fraud, black-collar crime, the politicized exception who refuses to allow the people to read and write the law, or worse does demand an arbitrary personal exception for those parties with whom the Judiciary are in conference.

The Constitution of the United States of America limits power conferred in the cause of the people without politeian exception, and this includes the status and tenure of Judges and Attorneys who themselves have often proceeded on a less exact, and more parliamentary term in order to remain as "friends."

The high-level criticism admits they make the people's standing into a conferential privilege and falsely proceed it as gradualism; they keep us unlawfully in ethical suspense

while they violate the Constitution per se by departing from the only interpretation available to the Preamble.

The Conferential privilege is a thing that comes by way of strict consent, with terms so exclusivying as to be offensive to a popular constitution.

The people beneath that privilege cannot plead for Federal Officers to interpret the Constitution of the United States of America, because the lawyers will not allow them to read the law.

The criticism of this party initially is that the judiciary have refused to confer standing as of right in the District Court; the other way of describing this, we observe the Judge is in a complex political conference who refuses to consent to the complainant's personal jurisdiction, has not stated his true objections, cannot defend his own opinion, and so dissents from our convention on an understated conferential privilege.

We feel it is likely he is intimidated by the Democratic-Republican conference who do not much plainly state the form, manner, and intent of the Constitution of the United States of America than vie for power of "traditional" prerogatives over political power, he happens to misstate the Judicial Branch for Executive Government.

We know better and the Judiciary are the weakest branch, which in part means they must be ready to hear the people first and admit how limited government is interested in anyone's real civil intelligence to abolish exceptionalism, both criminal and civil, in terms of public standing.

Government Malpractice distorts the impartiality of the Government at Law, and officers knowing malpractice and partial malpractice are obligated to reconsider their form and statement of the oath because it is not a conferential government, it is not a parliamentary scheme to guarantee arbitrary decision in United States Courts, so much is plain from the Federalist Papers Nos. 41-47 who take presumption on the acceptance of the Preamble as their sole original and formal implication and can only reasonably be read as expanding the power of agency in the exclusivying cause of the people, the orderly terms of statutory exclusivity, who do not view the people as an adversary agency unless their pleadings alone are vexatious to disposition the form and manner, the meaning and intent, of the government at law, to exclude the very same people.

Restated, the judiciary simply cannot abstract the exclusivity of the law wherefore it is a textualist approach, in doing so they happen to invoke the reciprocal objection as consistent with *Marbury v. Madison,* that delineation reciprocal from exclusive is best maintained de riguer on the basis of recursive reasoning in formal case study, argument, and review; rules 8 and 12 have tended to govern analytical logic consistent with recursive reasoning where facts are singular and then become systematic and synthetic.

In short, Judiciary, Federal Officers, should not abstract the conditional exclusivity of the law because it is a textualist approach; instead, their primary abstract should proceed from the Preamble of the Constitution of the United States of America who elicits the concrete and abstract Public Law where invoked the term of the People we can only read it as *without exception;* in doing so, we land upon a consistent methodology for defining law,

in Necessary and Proper terms, Terms consistent for Executive government format to 'Take Care,' Terms that may define *any* Case or Controversy, that are consistent with presumption of a Supreme Law that limits conferential exclusivity when successfully defined. Each of the branch agencies has a formal clause tying it to the Preamble, and formally limiting its qualified exclusivity to the Constitution in terms of the People.

We can refute a Federal Officer, or a seditious pleader, plainly on the written page and in the court, the Judiciary are our only generally available liaison to the government when Executive Agency is unavailable, or corrupted. The legal complaint is an expression of the Constitution of the United States of America, and must be refined through trial processes to define the public question.

Judiciary who cannot accept the Pro Se petition may resign; they have done extreme harm to these people, and have precipitated cause after cause by meddling in the real life of the victim, they are not in confidence to those whom they have intentionally harmed, and demand the intentional ignorance of those crimes as penance for the well-developed skills of reading and writing; again, we have refuted them and it is inappropriate for the presence of a United States Court to have been misused to sanction criminal malpractice within the government by intentional misstatement of the Constitution of the United States of America; conditions of agency exclusivity were never intended to be a basis to improperly dilute civil intelligence, the judiciary must police itself at the reasonable advice of competent and even verbose petitioners.

Refusing to interpret the Constitution of the United States of America this way is counter-revolutionary and distorts the promissory resolution of the government, the natural ability a Limited Government subtends to maintain the "social contract," because our constitution is formally dedicated to the people without exception and can be interpreted no other way, the whole promissory agency of the government is designed within the Judiciary who must meet every single diverse person with a genuine complaint.

It is duly Set Aside for Fraud on the Court.

s/Carlos Velasquez, Pro Se Appellant 3/10/26

# ADDENDA

Exhibit No. 2, Initial Employment Offer............................................................002

Exhibit No. 30, Amazon Owner's Manual and Guide to Employment............................007

U.S. Department of Justice, Criminal Resource Manual, CRM 1743. Perjury—Overview of 18 U.S.C. §1621 And 1623 Violations...............................................................022

United States Code, 18 U.S.C. § 1001.............................................................025

United States Code, 18 U.S.C. § 1621.............................................................029

United States Code, 18 U.S.C. § 1623.............................................................031

Judicial Order, Denying to Show Cause, No. 27....................................................033

Judicial Order, Memorandum Granting Defendant's Motion to Dismiss with Declaration of Judgment, Nos. 36 and 37...............................................................038

Judicial Order, Denying Relief from a Judgment, No. 44..........................................054

Circuit Order, Denying Jurisdiction of an Interlocutory Appeal, CA10 25-4145................057

Circuit Order, Denying Reconsideration, CA10 No. 25-4145.....................................060

Circuit Order, Subject to Disqualification and Fraud on the Court Review, CA10 No. 20-4087..............................................................................064

001



**amazon**

P.O. BOX 81226, SEATTLE, WA. 98108-1226

┌─────────────┐
│  **EXHIBIT** │
│      **2**   │
└─────────────┘

4/18/2019

Amazon.com Services, Inc.
410 Terry Ave N.
Seattle, WA 98109
Employee Resource Center:  (888) 892-7180

Carlos  Velasquez
1848 East Ramona Ave
Salt Lake City, UT
84108
USA

Dear Carlos:

On behalf of Amazon.com Services, Inc. (the "Company"), I am very pleased to offer you the Part-time (20-29 hours) position of Sortation Associate. This letter clarifies and confirms the terms of your employment with the Company. You will be working a Part-time (20-29 hours) schedule.

**Start Date and Compensation**

Unless we mutually agree otherwise in writing, you will commence employment on April 21, 2019 ("Start Date"). You will ordinarily be scheduled to work 20 hours per seven-day week. Your salary will be $15.00 per hour, ($15,600.00 annualized based on 1,040 hours per year) and a $1.00 per hour Shift Differential ($1,040.00 annualized based on 1,040 hours per year), payable Weekly (Friday) in accordance with the Company's standard payroll practice and subject to applicable withholding taxes. You will be eligible for overtime pay in accordance with applicable laws.

**Department, Manager and Shift**

Department: 1092 DUT1 USA AMZL Logistics – DS Variable
Manager: Christopher Young
Shift Pattern:

Your shift or schedule may change in the future. Based on business need, Amazon.com Services, Inc. reserves the right to modify shift times or rotate employees between existing shifts at any time in the company's sole discretion. Peak schedule information will be posted when it becomes available.

  

DocuSign Envelope ID: F4D876C0-62B9-4492-80A8-4F1CBE7DE1EC

Case 2:25-cv-00674-DAK    Document 5-1    Filed 08/12/25    Page 2 of 4    PageID 153
Appellate Case: 26-4000    Document: 11-1    Date Filed: 02/05/2026    Page: 147

**Shift Information**

Employees who work in Fulfillment Centers are expected to be open to working a variety of shifts. Most buildings, for instance, have night and weekend shifts, and many of our day shifts include one weekend day as part of the regular schedule. We do our best to match shifts with personal preference, but we reserve the right to assign employees to shifts and schedules based on business needs. All employees may be required to work overtime or on holidays, especially during our busy seasons.

**Preemployment Screening**

This offer is contingent on the successful completion of a background check and drug test.

**Employment at Will**

If you accept our offer of employment, you will be an employee-at-will, meaning that either you or the Company may terminate our relationship at any time for any reason, with or without cause. Any statements to the contrary that may have been made to you, or that may be made to you, by the Company, its agents, or representatives are superseded by this offer letter.

**Confidentiality and Invention Assignment Agreement**

As a condition of your employment, you must sign the enclosed Confidentiality and Invention Assignment Agreement (the "Agreement"). Please review the Agreement carefully and, if appropriate, have your attorney review it as well.

**Employment Eligibility**

To comply with immigration laws, you must provide the Company with evidence of your identity and eligibility for employment in the United States no later than three (3) business days after your date of hire. If you are in visa status, you also must provide new or renewed evidence of your eligibility for employment immediately prior to or upon expiration of your visa authorization.

**Additional Provisions**

If you accept this offer, the terms described in this letter will be the initial terms of your employment, and this letter supersedes any previous discussions or offers. Any additions to or modifications to this offer must be in writing and signed by you and an officer of the Company.

**This offer and all terms of employment stated in this letter will expire ten calendar days from the date of this letter.**

Carlos, we are very excited about the possibility of you joining us. I hope that you will accept this offer and look forward to a productive and mutually beneficial working relationship. Please let me know if I can answer any questions for you about any of the matters outlined in this letter.

Sincerely,

  

Christopher Yeung
Manager II, Operations

## ACCEPTANCE

I accept employment with Amazon.com Services, Inc. under the terms set forth in this letter.

┌─ DocuSigned by:

*Carlos Velasquez*

└─ 15CE7D5E85524D9...
_____
Signature

4/19/2019
_____
Date

Carlos  Velasquez

┌─────────────┐
│  **EXHIBIT** │
│    **2**     │
└─────────────┘

  

Assigned To : Romero, Cecilia M.
Assign. Date : 8/12/2025
Description: Velasquez v. Amazon.com
Services Inc.

2025 AUG 12 AM 9:38
CLERK
U.S. DISTRICT COURT

Owner's Manual and Guide to Employment – December 2017

EXHIBIT
30

# amazon®

# Owner's Manual
# And Guide to Employment

1

73

**007**

Owner's Manual and Guide to Employment – December 2017



**WELCOME TO AMAZON!**

We're thrilled to have you join us as we work hard, have fun, and make history! We think we've created an exceptional work environment that marries hard-charging intensity with major-league fun. As you get to know the folks at Amazon, you'll discover a group of diverse, world-class associates who treat each other with respect, work together as a team, and act like what they are: true owners of the company.

Our overall mission is simple: we want Amazon.com to be the place where our customers can find, discover, and buy, anything online! Whatever our customers tell us they want, we will find the means to deliver. In doing so, we will create the most customer-centric company in the universe -- a company that customers from all over the globe will recognize, value and trust for both our products and our service. With your help, Amazon will continue to enable people to discover new worlds and create change in a meaningful and lasting way.

Amazon is at the beginning of its history. Already millions of people have shown their faith in our future, through buying from us, through investing in us, and through working with us. Thanks again for joining Amazon and helping us shape the future.

Once again, welcome aboard!


*Jeff Bezos*
Founder & CEO

**008**

Owner's Manual and Guide to Employment – December 2017

## Table of Contents

EXHIBIT
**30**

Amazon and You ........................................................................................................ 6
  About This Document ............................................................................................ 6
  Getting Started ...................................................................................................... 7
  What We Can Expect from Each Other ................................................................ 8
  Open Door Policy and Conflict Resolution .......................................................... 8
  At-Will Employment .............................................................................................. 8
  Employment Classifications .................................................................................. 8
  Working Hours ...................................................................................................... 9
  Attendance and Punctuality ................................................................................. 9
  Corrective Action .................................................................................................. 10
  Performance Evaluation ........................................................................................ 10
  Internal Transfers and Promotions ...................................................................... 10
  Dealing with the Public ......................................................................................... 11
  Personnel Information and Records ..................................................................... 11
  Resignation ........................................................................................................... 11
  Pay Periods and Direct Deposit ........................................................................... 12
  Payroll Deductions ............................................................................................... 12
  Overtime Pay ........................................................................................................ 12
  Travel Time Pay .................................................................................................... 13
  Holidays ................................................................................................................ 13
  Additional Paid Time Off ...................................................................................... 13
    Vacation ............................................................................................................ 13
    Paid Personal Time Off ..................................................................................... 14
    Bereavement Time Off ...................................................................................... 14
    Jury and Witness Duty Time Off ....................................................................... 14
    Sick and Safe Time Required Notices .............................................................. 14

3

Owner's Manual and Guide to Employment – December 2017

Leaves of Absence ........................................................................................................... 15

   Benefits during a Leave of Absence................................................................... 15

   Family and Medical (FMLA) Leave ...................................................................... 15

   Medical Leave ...................................................................................................... 16

   Personal Leave .................................................................................................... 16

   Military Leave ....................................................................................................... 16

Alternative Work Arrangements ....................................................................................... 17

   Types of Alternative Work Arrangements ........................................................... 17

Code of Business Conduct and Ethics.............................................................................. 18

Confidential Information .................................................................................................... 19

Cost Efficiency................................................................................................................... 19

Purchasing and Spending Authorization .......................................................................... 19

Travel and Entertainment.................................................................................................. 19

Amazon Rental Vehicle Policy.......................................................................................... 20

Drug and Alcohol Use ....................................................................................................... 20

Employees with Disabilities .............................................................................................. 20

Employment Outside of Amazon....................................................................................... 21

Employment of Relatives and Friends .............................................................................. 21

Employment References.................................................................................................... 21

Equal Employment Opportunity ........................................................................................ 21

Health and Safety .............................................................................................................. 21

Safety Programs and Training........................................................................................... 21

Reporting Accidents and Concerns about Workplace Safety ........................................... 21

Information Security........................................................................................................... 22

Privacy................................................................................................................................ 22

Acceptable Use.................................................................................................................. 22

   Protecting Data and Securing Access to the Company Network....................... 22

Reporting Violations .......................................................................................................... 23

Insider Trading................................................................................................................... 23

Physical Security ............................................................................................................... 24

   Badges and Other Important Information............................................................ 24

**010**

Owner's Manual and Guide to Employment – December 2017

Workplace Emergency Response ................................................................................................. 24

Inspections on Company Premises ............................................................................................. 24

Solicitation ................................................................................................................................... 25

Transitional Work ........................................................................................................................ 25

Workplace Harassment ............................................................................................................... 25

Anti- Sex Buying Policy ................................................................................................................ 26

Sexual Harassment ...................................................................................................................... 26

Other Harassment ....................................................................................................................... 26

Consensual Relationships ............................................................................................................ 26

Responding to Inappropriate Conduct or Possible Incidents of Harassment ............................ 27

Standards of Conduct .................................................................................................................. 27

EXHIBIT
**30**

5

**011**

Owner's Manual and Guide to Employment – December 2017

## What We Can Expect from Each Other

You've probably figured out by now that this is not an ordinary company, and we have extraordinary people on our team. Accordingly, the company is committed to treating each associate fairly and with respect, and to maintaining an environment of open communication. As an associate, your primary responsibility is to do an outstanding job on your work. The efforts of each person, working individually and as part of the Amazon team, are the means for meeting the overall objectives of the company. We do also expect associates to maintain a high professional standard of behavior and job performance and to adhere to the policies set forth in this Manual.

## Open Door Policy and Conflict Resolution

Amazon believes that candid and constructive communication is essential to the smooth functioning of our workplace and to maintaining an atmosphere of mutual respect. Accordingly, we have an "open door" policy, which means that you are welcome to discuss any suggestion, concern, or other feedback with any member of the company's management. Associates are encouraged to bring their ideas to the attention of management.

The majority of misunderstandings are satisfactorily resolved by a thorough discussion and mutual understanding between the parties involved. In general, it is best to discuss any concerns with your immediate supervisor first. If you are unable to reach a satisfactory resolution with your supervisor or are not comfortable discussing the issue with your supervisor, you are welcome to discuss the matter with the next level of management, with Human Resources, or with any member of senior management. When you bring a concern to Human Resources, it will be reviewed, and if appropriate, action will be taken. Human Resources will communicate with you regarding the outcome.

If you believe that you or another associate has been subject to workplace harassment, pursuant to the provisions of the Workplace Harassment policy in this Manual, you should immediately report this to any manager or member of Human Resources. See the Workplace Harassment policy for more information.

# Employment at Amazon

## At-Will Employment

Employment at Amazon is not for any specified length of time, and both the associate and the company have the right to end the employment relationship at any time, with or without cause and with or without prior notice or warning. Only Amazon's general counsel and chief financial officer have authority to bind the company to policies or agreements that conflict with this policy of at-will employment. Any such exception must be in a written agreement signed by Amazon's general counsel or chief financial officer.

## Employment Classifications

Each position at the company is broadly classified by regularly expected work hours and whether the associate is eligible for overtime pay. These classifications are dictated both by the company's business needs and state and federal wage-hour laws.

Each position falls into one of the following employment types:

8

Owner's Manual and Guide to Employment – December 2017

- **Regular full-time:** Regular (non-temporary associate who is regularly expected to work at least 40 hours per week.
- **Regular part-time 30+ hours:** Regular (non-temporary) associate who is regularly expected to work at least 30, but less than 40, hours per week.
- **Regular part-time 20+ hours:** Regular (non-temporary) associate who is regularly expected to work at least 20, but less than 30, hours per week.
- **Flex associate:** Regular (non-temporary) associate who is not regularly expected to work 20 or more hours per week, such as an on-call associate.
- **Short-term associate:** Hired for employment that is expected to last no more than six months, such as an intern or seasonal associate.

**EXHIBIT 30**

The above employment types only apply to Amazon associates. Outsourced workers such as temporary agency employees placed on assignment at the company, independent contractors, or consultants are not considered Amazon associates.

Associates are also classified as exempt or non-exempt. Non-exempt associates are eligible for overtime pay and are ordinarily paid by the hour and, and exempt associates are not eligible under federal and state laws for overtime pay and are ordinarily paid a salary.

Eligibility for stock-based awards and benefits is based on employment type (such as regular full-time or regular part-time, etc.). Changes to an associate's employment type must be approved the associate's manager and Human Resources.

## Working Hours

Managers are responsible to establish work schedules that accommodate operational priorities, and each associate should be flexible in meeting these priorities. Work schedules for hourly associates may vary from site to site and week by week. This flexibility is critical to Amazon's success as a company. The intense nature of our business and the demands of an e-commerce environment require that associates make a serious commitment of time and energy to Amazon. Salaried associates should clearly understand that they may frequently work extended hours to help the company succeed. Hourly associates may also be required to work varying amounts of overtime, as Amazon's needs require.

Most positions at the company require associates to work full-time. The company recognizes that situations may occur where associates may need to temporarily alter their work schedules in order to better accommodate difficult or demanding periods of their lives, while still meeting the demands of their job. Additionally, associates may sometimes require an alternative work arrangement when medically necessary while recovering from an illness or injury. Towards these ends, Amazon will consider requests for an alternative work arrangement. For further information, please see the Alternative Work Arrangement Policy in this Manual.

Hourly associates must report all hours worked, whether at an Amazon building or off-site. No one may allow or ask any hourly associate to work "off the clock" without being paid. Hourly associates working more than five hours are generally required to take a work-free, unpaid 30-minute meal period. The meal period must start no later than five hours or, in some locations, five-and-a half hours after the associate begins working. Additional meal periods are provided in some circumstances. Hourly associates are required to take a minimum ten-minute paid break for every four hours worked or major fraction thereof. Please check with your manager or Human Resources Business Partner regarding your work schedule. For more information, see the complete U.S. Working Hours Policy for non-exempt/hourly associates: Working Hours (Non-Exempt/Hourly) Policy.

## Attendance and Punctuality

Regular attendance and punctuality are important parts of your obligations as an Amazon associate. You are to work the hours scheduled by your manager. If you are going to be absent or late to work, we expect to

9

Owner's Manual and Guide to Employment — December 2017

hear from you before the start of your workday. Please be aware that unsatisfactory attendance may be a basis for disciplinary action, up to and including dismissal.

Individual sites or departments may establish specific guidelines for attendance and punctuality, based on the needs of the business. If your site or department has specific guidelines, your manager or Human Resources will review them with you, and it is expected that you will abide by them throughout your employment in that department.

In the event that we have not heard from you for three (3) consecutive workdays, you will be considered to have resigned from your employment.

## Corrective Action

To ensure orderly operations and provide the best possible environment, Amazon expects associates to follow rules and exhibit conduct that will protect the interests and safety of all associates and the organization. The appendix to the Owner's Manual includes the Standards of Conduct, a list of examples of infractions that may result in corrective action, up to and including termination of employment. The Standards of Conduct are only guidelines. It is not possible to list all the forms of behavior that are considered unacceptable in the workplace, and the Standards of Conduct is not intended to be all-inclusive or exhaustive. Abiding by the Standards of Conduct is necessary but is not sufficient for continued and successful employment at Amazon. The bar is much higher, and associates are expected to perform at a very high level in serving our customers. As an at-will employer, Amazon reserves the right in all circumstances to apply any level of corrective action as appropriate, up to and including immediate termination of employment, without prior corrective action or notice for conduct in either category or for conduct not described in the Standards of Conduct.

## Performance Evaluation

Managers and associates are strongly encouraged to discuss job performance and goals on an informal and frequent basis. Formal performance evaluations are typically conducted on an annual basis. Amazon or individual sites or departments may establish more frequent performance review periods. Performance evaluations become a part of your personnel file and may be used for future employment decisions and consideration such as transfers, promotions, compensation decisions, training, salary reviews, and corrective action.

## Internal Transfers and Promotions

Employees may apply for a voluntary internal transfer at any time. Employees who are not currently meeting performance standards must obtain manager approval before interviewing. More information regarding the Internal Transfer process is available from your Human Resources Business Partner or on the intranet at: Job Transfers

At Amazon, we have two types of promotions: Career Development and Open Position. A Career Development Promotion occurs when there is an increase in an associate's current job level within the same job family (for example, a move from Financial Analyst to Sr. Financial Analyst). For an associate to be promoted, the manager (1) must justify the business need for that position to be one job level above the associate's current level; and (2) must show that the associate has demonstrated the skills and competencies needed to assume the responsibilities of the new position. Career Development Promotions are reviewed on a calendared cycle.

An Open Position Promotion can occur when an associate applies and is hired into an approved, budgeted, and posted position that is one job level higher than the associate's current level. All associates must use the Internal Transfer Process to apply. More information regarding the Promotion process is available from your Human Resources Business Partner or on the intranet at:

Promotions

10

82

**014**

Owner's Manual and Guide to Employment – December 2017

Associates who are transferred or promoted to a new position sometimes receive a compensation adjustment to a level that is appropriate for the new position. A position change may also affect certain benefits (such as vacation accrual and benefit premiums), trading window restrictions, pay periods, and future pay increases or additional stock-based award grants.

## Dealing with the Public

**EXHIBIT**

**30**

To ensure that Amazon follows all rules applying to a public company regarding disclosure of information, the company has designated certain associates to represent the company to the public. No other associate should speak with media representatives on Amazon's behalf , even to answer apparently innocuous questions. Press inquiries and requests for interviews or public appearances by Amazon should be forwarded to the Strategic Communications department at 206-266-7180 (or x6-7180 when dialing internally). Financial inquiries should be directed to the Investor Relations department at 206-266-2171 (or x6-2171 when dialing internally) or ir@amazon.com. It is extremely important that all questions directed to Amazon are forwarded to one of the above departments, who are the company's only designated spokespeople.

Associates must always comply with Amazon's Confidential Information policy (see below in this Owner's Manual) by not revealing, confirming, or discussing confidential information without authorization. Nothing in the Owner's Manual prohibits non-supervisory employees' communications about wages, hours, or working conditions.

## Personnel Information and Records

The company maintains personnel records in personnel files, in payroll, and in several other forms (information stored electronically, etc.). The information the company maintains is needed by the company in conducting its business or is required by federal, state, or local laws.

Personal Information: Human Resources should be notified promptly of any changes in name, residential address, home telephone number, marital status, name of beneficiary, or dependents listed on your insurance policy, number of dependents for withholding tax purposes, or person to notify in case of an emergency. Most associates can make changes to this information by using our PeopleSoft self-service option located on the intranet at:

PeoplePortal

Associates who do not have access to the self-service option in PeopleSoft should notify Human Resources with such changes. Additionally, your manager will be provided with your home telephone number in the event he or she needs to contact you for business purposes.

Personnel files: Human Resources will maintain your personnel file. Your personnel file ordinarily will be made available to your manager and others with a need to know, such as a hiring manager if you apply for a new position internally. You may review your personnel file periodically, upon giving written request with reasonable notice to Human Resources. Personnel files are company property and may not be removed from company property. If you believe that certain materials in your personnel file are irrelevant, inaccurate, or obsolete, you may informally request their removal by speaking with HR or submit a written statement that may be included in your personnel file. You may also request copies of specific documents in your file. Seattle employees can contact the Employee Resource Center to schedule a time to review their file.

## Resignation

If you decide to resign from your employment at Amazon, we request that you provide at least two (2) weeks' notice. This will give your manager the opportunity to adjust his or her plans with the least amount of interruption to company work schedules. We encourage associates who resign voluntarily to submit such resignation in writing, with the reason for resigning and the effective date stated.

11

Owner's Manual and Guide to Employment – December 2017

These articles may be accessed by authorized personnel of the Company, who may enter your office, workspace, or locker in order to do so. Typically, the Company will conduct searches on Company premises when it receives a report of or suspects a violation of the Company's Standards of Conduct. However, the Company reserves the right to inspect for any purpose. The Company also may use various electronic detection devices, such as walk-through or hand-held metal detectors. Refusal to permit the company to conduct the searches identified in this section may lead to disciplinary action, up to and including termination of employment.

## Solicitation

The orderly and efficient operation of Amazon's business requires certain restrictions on solicitation of associates and the distribution of materials or information on company property. This includes solicitation via company bulletin boards or email or through other electronic communication media.

The following activities are prohibited:

- Solicitation of any kind by associates on company property during working time;
- Distribution of literature or materials of any type or description (other than as necessary in the course of your job) by associates in working areas at any time; and
- Solicitation of any type on company premises at any time by non-associates.

Examples of prohibited solicitation include the sale of merchandise, products, or services (except as allowed on forsale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, and signatures on petitions, or distributing advertisements or other commercial materials.

The only exceptions to this policy are communications for company-sponsored activities or benefits, or for company-approved charitable causes, or other specific exceptions formally approved by the company. All communications under these exceptions must also have prior approval of Human Resources. Violation of this policy may result in immediate disciplinary action, up to and including termination of employment.

## Transitional Work

In the event you are temporarily unable to perform your job due to a work-related injury or occupational disease, we hope to assist you in obtaining proper treatment and returning you to your regular job as soon as possible. If you are unable to immediately return to your regular job, we will attempt to return you to temporary transitional work if it is consistent with your medical restrictions and consistent with Amazon's business needs. This policy outlines the procedures for notifying the Company concerning your condition to assist in your return to work. By this joint effort, Amazon hopes to help associates recover at a rapid rate, retain productive value, and reduce unnecessary medical costs. The complete Transitional Work Policy is available from your Human Resources representative or on the intranet at:

Transitional Work Policy

## Workplace Harassment

At Amazon, we believe that our associates should be treated with respect and dignity. Therefore, we will not tolerate inappropriate conduct, including discriminatory harassment, of any kind based on race, religion, creed, color, national origin, citizenship, marital status, sex, age, sexual orientation, gender identity, veteran status, political ideology, ancestry, or the presence of any physical, sensory, or mental disabilities, or other legally protected status.

Conduct prohibited by this policy is unacceptable in the workplace and in any work-related setting outside of the workplace, such as during business trips, business meetings, or business-related social events. This policy applies to the conduct of all Amazon associates as well to the conduct by or toward non-employees involved in our business, such as subcontractors, consultants, clients, customers or vendors. This policy is intended to be consistent with federal and state laws prohibiting discriminatory harassment in the workplace.

30

**016**

| | EXHIBIT | |
|---|---|---|
| Anti-Sex Buying Policy | **30** | Owner's Manual and Guide to Employment – December 2017 |

It is against Amazon's policy for any employee or Contingent Worker to engage in any sex buying activities of any kind in Amazon's workplace or in any work-related setting outside of the workplace, such as during business trips, business meetings or business-related social events. It likewise is prohibited to engage in sex buying activities in using any company property, equipment or software (including, without limitation, company credit cards, expense accounts, buildings, parking lots, grounds, computers, storage devices, websites, social media channels, networks, vehicles, and phones). This prohibition applies regardless of whether the activity is legal or tolerated in a particular jurisdiction, foreign or domestic.

## Sexual Harassment

One type of harassment prohibited by this policy is sexual harassment. Sexual harassment generally consists of unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when (1) submission to or rejection of such conduct is the basis for employment decisions affecting an applicant or associate; or (2) such conduct has the purpose or effect of creating a sexually offensive, hostile, or intimidating work environment that interferes with an individual's ability to perform the job.

Examples of sexual harassment include, but are not limited to:

- requests or demands of sexual favors in exchange for favorable or preferential treatment;
- sexual jokes or use of sexually explicit language;
- unwelcome or unwanted physical contact;
- sexually degrading words used to describe an individual;
- sexual comments injected into business communications;
- the communication of sexually offensive material via electronic mail or voice mail;
- graphic verbal comments about an individual's body;
- physical or verbal abuse of a sexual nature;
- unwelcome sexual flirtations, advances, or propositions; and
- downloading, circulating, or displaying in the workplace, sexually suggestive objects and/or pictures, including such material from the Internet.

## Other Harassment

Workplace harassment prohibited under this policy is not limited to sexual harassment. Statements or actions that offend or demean an individual based on his/her race, religion, creed, color, national origin, citizenship, marital status, age, sexual orientation, gender identity, veteran status, political ideology, ancestry, or the presence of any physical, sensory, or mental disabilities are also inappropriate and are strictly prohibited.

## Work-Related Exposure to Potentially Offensive Materials

In many areas of our business, we create, market and distribute products and programming that is adult themed, sexually explicit, or includes images and speech related to personal characteristics such as race, religion, sexual orientation, gender, gender identity, national origin, disability, and age. Associates may be exposed to materials that some may consider offensive. While this exposure is often unavoidable in our work environment, harassing conduct directed at someone because of any protected personal characteristic is strictly prohibited. Associates should discuss any concerns about the nature of our business or their work environment with their supervisor, a department manager, or Human Resources.

## Consensual Relationships

At times, consensual, romantic and/or sexual relationships between co-workers may occur. When such a relationship is between an associate who has supervisory authority and one who does not, an actual or perceived conflict of interest may exist. Therefore, these situations should be avoided. If such relationships arise, they will be considered carefully by Amazon, and appropriate action will be taken. Such action may

30

**017**

include a change in the responsibilities of the individuals involved, re-assignment or transfer of location within the Company, or termination of employment.

Additional information for the Fulfillment Center and Customer Service location is available here:

Consensual Relationship Policy

## Responding to Inappropriate Conduct or Possible Incidents of Harassment

All associates, regardless of position, are responsible for ensuring that our workplace is free from offensive behavior and harassment. Associates who observe or experience inappropriate or harassing conduct in the workplace by anyone, including supervisors, coworkers, customers, or visitors, may advise the offender that their behavior is unwelcome and request that it stop. In addition, associates who encounter such behavior should report it immediately to their supervisor, to a department manager, or to a Human Resources Business Partner. It is important that associates feel comfortable reporting such incidents; therefore, no retaliation of any kind will be permitted or tolerated against an associate for reporting a suspected incident of harassment. If associates believe that they have been retaliated against for making a good faith complaint of harassment or discrimination, they should report this immediately to their supervisor, a department manager or to a Human Resources Business Partner. You can locate your appropriate Human Resources Business Partner through the following link on the intranet:

https://contactstool.amazon.com/

Amazon will promptly investigate any reports of workplace harassment or inappropriate conduct and will enforce appropriate disciplinary action where necessary. To the extent possible, the associate's privacy, and that of any witnesses, as well as of the alleged harasser, will be protected against disclosure, except as necessary to conduct the investigation.

Prompt, corrective action will be taken when appropriate. This action may include disciplinary action such as a warning, reprimand, reassignment, temporary suspension with or without pay, or termination of employment, as Amazon believes appropriate under the circumstances. False complaints of harassment, discrimination, or retaliation that are not made in good faith may be the subject of similar appropriate disciplinary action.

# Appendix - Standards of Conduct

## Standards of Conduct

The Standards of Conduct are a list of examples of infractions that may result in corrective action, up to and including termination of employment. The Standards of Conduct are only guidelines. It is not possible to list all the forms of behavior that are considered unacceptable in the workplace, and the Standards of Conduct is not intended to be all-inclusive or exhaustive. As an at-will employer, Amazon reserves the right in all circumstances to apply any level of corrective action as appropriate, up to and including immediate termination of employment, without prior corrective action or notice for conduct in either category or for conduct not described in the Standards of Conduct. Employment with Amazon is at the mutual consent of Amazon and the associate, and either party may terminate that relationship at any time, with or without cause, and with or without advance notice.

Category 1

The following work conduct infractions are regarded as extremely serious, and termination of employment may result following one offense:

- Disrespect or rudeness to an Amazon customer
- Theft or inappropriate removal or possession of property

30

Owner's Manual and Guide to Employment – December 2017

- Assaulting, threatening, intimidating, coercing, or interfering with supervisors or fellow associates
- Making unauthorized statements on behalf of the company to the press or in any public forum (as only the company's authorized spokespersons may make authorized statements)
- Use or possession of dangerous or unauthorized materials such as hazardous chemicals or explosives, or use or possession of firearms, knives, explosive devices of any kind, or weapons of any kind
- Violation of the company's Health and Safety policy including possession, distribution, sale, transfer, or use of alcohol or illegal drugs in the workplace, while on duty or on breaks, or while operating employer-owned or leased vehicles or equipment
- Fighting or threatening violence in the workplace
- Gross misconduct
- Gross negligence
- Sexual or other unlawful or unwelcome harassment

> **EXHIBIT 30**

- Making, publishing, or repeating knowingly or maliciously false statements concerning an associate, the company, or its products
- Discriminating against a fellow associate or prospective associate on the basis of race, religion, creed, color, national origin, citizenship, marital status, sex, age, sexual orientation, gender identity[1], veteran status, political ideology, ancestry, or the presence of any physical, sensory, or mental disabilities or other legally protected status
- Negligence or improper conduct leading to damage of employer-owned, employer-leased, or customer-owned property
- Insubordination or intentional disregard of instructions
- Falsification of personnel or other company documents/records, including employment application
- Unauthorized removal of company documents
- Unauthorized disclosure of business "secrets" or confidential information
- Intentionally making entries on another associate's time card/sheet, or falsely altering a timekeeping document
- Leaving company premises without permission during assigned work hours (unpaid meal periods are not "work hours" for purposes of this policy)
- Failure to fully cooperate with company investigations (except for questions regarding labor organizations or protected concerted activity)
- Violation of safety policies, procedures, standards, regulations, or laws
- Creating a hazardous or dangerous situation
- Engaging in any conduct that places the health and safety of any person at risk
- Violation of personnel policies
- Violation of security policies, procedures, processes, or instructions
- Violation of the Anti-Sex Buying Policy.

Category 2

The following work conduct infractions are considered serious and generally result in corrective action:

- Unauthorized absence, excessive absenteeism, or any absence without notice
- Failure to carry out a work assignment in an efficient, responsible, and acceptable manner
- Abusive, vulgar, or harassing language to a supervisor, fellow associate, or vendor
- Failure to adhere to starting time, quitting time, or break time policies, or wasting time
- Unauthorized use, misuse, or abuse of equipment, products, material, or property belonging to other associates, belonging to the company, or in the company's custody
- Leaving a company-assigned work area during scheduled working hours without permission
- Violations of the no-solicitation, no-distribution policy
- Creating or contributing to disorderly or unsanitary conditions
- Failing to report or remedy any unsafe conditions, procedures, or behaviors
- Failure to immediately report an accident/injury, regardless of severity, when it occurs on company property, or while performing company business

---

[1] Updated on 12.30.08 (EEO, Workplace Harassment, Other Harassment, Category 1 discrimination)



**Archives**
U.S. Department of Justice

**CRIMINAL RESOURCE MANUAL**

## CRM 1500-1999

# 1743. Perjury -- Overview Of 18 U.S.C. §1621 And 1623 Violations

Several Federal statutes criminalize perjury and related false statements. The two most commonly used statutes for perjury offenses are 18 U.S.C. §§ 1621 and 1623. Section 1621 is the traditional, broadly applicable perjury statute, and is used to prosecute perjuries committed before legislative, administrative or judicial bodies. Section 1623, added in 1970, eliminated some of the proof problems associated with these difficult prosecutions, but Congress limited its applicability to false statements before Federal courts and grand juries. In *Hubbard v. United States*, 115 S.Ct. 1754, 1764 & n.15 (1995), the Supreme Court noted that these statutes, as well as sections 1503 (obstruction) and 287 (false claims) can apply to and penalize false statements made to the Judicial Branch. The Court also specifically found the Federal false statement statute, 18 U.S.C. § 1001, inapplicable to statements to the judiciary. However, in 1996, Congress amended the § 1001 in the False Statements Accountability Act of 1996, P.L. 104-292, H.R. 3166, Oct. 11, 1996. The amendment restored the Department's ability to prosecute false statements made to the legislative and judicial branches. *See also* this Manual at 902 *et seq.*

[cited in JM 9-69.200]

< 1742. Perjury -- Investigative Responsibility          1744. Elements Of Perjury >

022

**U.S. Department of Justice**

950 Pennsylvania Avenue NW

**023**

024

---

**18 USC 1001: Statements or entries generally**
Text contains those laws in effect on March 9, 2026

**From Title 18-CRIMES AND CRIMINAL PROCEDURE**
    PART I-CRIMES
    CHAPTER 47-FRAUD AND FALSE STATEMENTS
**Jump To:**
    **Source Credit**
    **Miscellaneous**
    **Amendments**
    **Change of Name**
    **Short Title**

---

## §1001. Statements or entries generally

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully-

    (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

    (2) makes any materially false, fictitious, or fraudulent statement or representation; or

    (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to-

    (1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

    (2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

(June 25, 1948, ch. 645, 62 Stat. 749 ; Pub. L. 103–322, title XXXIII, §330016(1)(L), Sept. 13, 1994, 108 Stat. 2147 ; Pub. L. 104–292, §2, Oct. 11, 1996, 110 Stat. 3459 ; Pub. L. 108–458, title VI, §6703(a), Dec. 17, 2004, 118 Stat. 3766 ; Pub. L. 109–248, title I, §141(c), July 27, 2006, 120 Stat. 603 .)

### HISTORICAL AND REVISION NOTES

Based on title 18, U.S.C., 1940 ed., §80 (Mar. 4, 1909, ch. 321, §35, 35 Stat. 1095 ; Oct. 23, 1918, ch. 194, 40 Stat. 1015 ; June 18, 1934, ch. 587, 48 Stat. 996 ; Apr. 4, 1938, ch. 69, 52 Stat. 197 ).

Section 80 of title 18, U.S.C., 1940 ed., was divided into two parts.

The provision relating to false claims was incorporated in section 287 of this title.

Reference to persons causing or procuring was omitted as unnecessary in view of definition of "principal" in section 2 of this title.

Words "or any corporation in which the United States of America is a stockholder" in said section 80 were omitted as unnecessary in view of definition of "agency" in section 6 of this title.

In addition to minor changes of phraseology, the maximum term of imprisonment was changed from 10 to 5 years to be consistent with comparable sections. (See reviser's note under section 287 of this title.)

### EDITORIAL NOTES

### AMENDMENTS

**2006**-Subsec. (a). Pub. L. 109–248 inserted last sentence in concluding provisions.

**2004**-Subsec. (a). Pub. L. 108–458 substituted "be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both" for "be fined under this title or imprisoned not more than 5 years, or both" in concluding provisions.

**025**

**1996**-Pub. L. 104–292 reenacted section catchline without change and amended text generally. Prior to amendment, text read as follows: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both."

**1994**-Pub. L. 103–322 substituted "fined under this title" for "fined not more than $10,000".

## STATUTORY NOTES AND RELATED SUBSIDIARIES

### CHANGE OF NAME

Reference to United States magistrate or to magistrate deemed to refer to United States magistrate judge pursuant to section 321 of Pub. L. 101–650, set out as a note under section 631 of Title 28, Judiciary and Judicial Procedure.

### SHORT TITLE OF 2004 AMENDMENT

Pub. L. 108–275, §1, July 15, 2004, 118 Stat. 831 , provided that: "This Act [enacting section 1028A of this title, amending sections 641 and 1028 of this title, and enacting provisions listed in a table relating to sentencing guidelines set out as a note under section 994 of Title 28, Judiciary and Judicial Procedure] may be cited as the 'Identity Theft Penalty Enhancement Act'."

### SHORT TITLE OF 2003 AMENDMENT

Pub. L. 108–21, title VI, §607(a), Apr. 30, 2003, 117 Stat. 689 , provided that: "This section [amending section 1028 of this title] may be cited as the 'Secure Authentication Feature and Enhanced Identification Defense Act of 2003' or 'SAFE ID Act'."

### SHORT TITLE OF 2000 AMENDMENT

Pub. L. 106–578, §1, Dec. 28, 2000, 114 Stat. 3075 , provided that: "This Act [amending section 1028 of this title, repealing section 1738 of this title, and enacting provisions set out as notes under section 1028 of this title] may be cited as the 'Internet False Identification Prevention Act of 2000'."

### SHORT TITLE OF 1998 AMENDMENTS

Pub. L. 105–318, §1, Oct. 30, 1998, 112 Stat. 3007 , provided that: "This Act [amending sections 982, 1028, and 2516 of this title and section 105 of the Ethics in Government Act of 1978, Pub. L. 95–521, set out in the Appendix to Title 5, Government Organization and Employees, and enacting provisions set out as notes under section 1028 of this title and section 994 of Title 28, Judiciary and Judicial Procedure] may be cited as the 'Identity Theft and Assumption Deterrence Act of 1998'."

Pub. L. 105–172, §1, Apr. 24, 1998, 112 Stat. 53 , provided that: "This Act [amending section 1029 of this title and enacting provisions set out as a note under section 994 of Title 28, Judiciary and Judicial Procedure] may be cited as the 'Wireless Telephone Protection Act'."

### SHORT TITLE OF 1996 AMENDMENT

Pub. L. 104–292, §1, Oct. 11, 1996, 110 Stat. 3459 , provided that: "This Act [amending this section, sections 1515 and 6005 of this title, and section 1365 of Title 28, Judiciary and Judicial Procedure] may be cited as the 'False Statements Accountability Act of 1996'."

### SHORT TITLE OF 1994 AMENDMENT

Pub. L. 103–322, title XXIX, §290001(a), Sept. 13, 1994, 108 Stat. 2097 , as amended by Pub. L. 104–294, title VI, §604(b)(34), Oct. 11, 1996, 110 Stat. 3508 , provided that: "This section [amending section 1030 of this title] may be cited as the 'Computer Abuse Amendments Act of 1994'."

### SHORT TITLE OF 1990 AMENDMENT

Pub. L. 101–647, title XXV, §2500, Nov. 29, 1990, 104 Stat. 4859 , provided that: "This title [see Tables for classification] may be cited as the 'Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990'."

### SHORT TITLE OF 1989 AMENDMENT

Pub. L. 101–123, §1, Oct. 23, 1989, 103 Stat. 759 , provided that: "This Act [amending section 1031 of this title, repealing section 293 of this title, enacting provisions set out as notes under sections 293 and 1031 of this title, and repealing provisions set out as a note under section 293 of this title] may be cited as the 'Major Fraud Act Amendments of 1989'."

### SHORT TITLE OF 1988 AMENDMENT

Pub. L. 100–700, §1, Nov. 19, 1988, 102 Stat. 4631 , provided that: "This Act [enacting sections 293 and 1031 of this title and section 256 of Title 41, Public Contracts, amending section 2324 of Title 10, Armed Forces, and section 3730 of Title 31, Money and Finance, enacting provisions set out as notes under sections 293 and 1031 of this title, section 2324 of Title 10, and section 522 of Title 28, Judiciary and Judicial Procedure, and repealing provisions set out as a note under section 2324 of Title 10] may be cited as the 'Major Fraud Act of 1988'."

### SHORT TITLE OF 1986 AMENDMENT

Pub. L. 99–474, §1, Oct. 16, 1986, 100 Stat. 1213 , provided that: "This Act [amending section 1030 of this title] may be cited as the 'Computer Fraud and Abuse Act of 1986'."

### SHORT TITLE OF 1984 AMENDMENT

Pub. L. 98–473, title II, §1601, Oct. 12, 1984, 98 Stat. 2183 , provided that: "This chapter [chapter XVI (§§1601–1603) of title II of Pub. L. 98–473, enacting section 1029 of this title and provisions set out as a note under section 1029 of this title] may be cited as the 'Credit Card Fraud Act of 1984'."

Pub. L. 98–473, title II, §2101, Oct. 12, 1984, 98 Stat. 2190 , provided that: "This chapter [chapter XXI (§§2101–2103) of title II of Pub. L. 98–473, enacting section 1030 of this title and provisions set out as a note under section 1030 of this title] may be cited as the 'Counterfeit Access Device and Computer Fraud and Abuse Act of 1984'."

### SHORT TITLE OF 1982 AMENDMENT

Pub. L. 97–398, §1, Dec. 31, 1982, 96 Stat. 2009 , provided: "That this Act [enacting sections 1028 and 1738 of this title and amending section 3001 of Title 39, Postal Service] may be cited as the 'False Identification Crime Control Act of 1982'."

**18 USC 1621: Perjury generally**
Text contains those laws in effect on March 9, 2026

**From Title 18-CRIMES AND CRIMINAL PROCEDURE**
　　PART I-CRIMES
　　CHAPTER 79-PERJURY
**Jump To:**
　　**Source Credit**
　　**Miscellaneous**
　　**Amendments**

## §1621. Perjury generally

Whoever-

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

(June 25, 1948, ch. 645, 62 Stat. 773 ; Pub. L. 88–619, §1, Oct. 3, 1964, 78 Stat. 995 ; Pub. L. 94–550, §2, Oct. 18, 1976, 90 Stat. 2534 ; Pub. L. 103–322, title XXXIII, §330016(1)(I), Sept. 13, 1994, 108 Stat. 2147 .)

### HISTORICAL AND REVISION NOTES

Based on title 18, U.S.C., 1940 ed., §§231, 629 (Mar. 4, 1909, ch. 321, §125, 35 Stat. 1111 ; June 15, 1917, ch. 30, title XI, §19, 40 Stat. 230 ).

Words "except as otherwise expressly provided by law" were inserted to avoid conflict with perjury provisions in other titles where the punishment and application vary.

More than 25 additional provisions are in the code. For construction and application of several such sections, see *Behrle v. United States* (App. D.C. 1938, 100 F. 2d 714), *United States v. Hammer* (D.C.N.Y., 1924, 299 F. 1011, affirmed, 6 F. 2d 786), *Rosenthal v. United States* (1918, 248 F. 684, 160 C.C.A. 584), cf. *Epstein v. United States* (1912, 196 F. 354, 116 C.C.A. 174, certiorari denied 32 S. Ct. 527, 223 U.S. 731, 56 L. ed. 634).

Mandatory punishment provisions were rephrased in the alternative.

Minor verbal changes were made.

### EDITORIAL NOTES

### AMENDMENTS

**1994**-Pub. L. 103–322 substituted "fined under this title" for "fined not more than $2,000" in concluding provisions.

**1976**-Pub. L. 94–550 divided existing provisions into a single introductory word "Whoever", par. (1), and closing provisions following par. (2), and added par. (2).

**1964**-Pub. L. 88–619 inserted at end "This section is applicable whether the statement or subscription is made within or without the United States."

**029**

030

**18 USC 1623: False declarations before grand jury or court**
Text contains those laws in effect on March 9, 2026

**From Title 18-CRIMES AND CRIMINAL PROCEDURE**
  PART I-CRIMES
    CHAPTER 79-PERJURY
**Jump To:**
  **Source Credit**
  **Miscellaneous**
  **Amendments**

## §1623. False declarations before grand jury or court

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years or, if such proceedings are before or ancillary to the Foreign Intelligence Surveillance Court or the Foreign Intelligence Surveillance Court of Review established by section 103 of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1803), imprisoned not more than ten years, or both.

(b) This section is applicable whether the conduct occurred within or without the United States.

(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if-

  (1) each declaration was material to the point in question, and

  (2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

(e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

(Added Pub. L. 91–452, title IV, §401(a), Oct. 15, 1970, 84 Stat. 932 ; amended Pub. L. 94–550, §6, Oct. 18, 1976, 90 Stat. 2535 ; Pub. L. 103–322, title XXXIII, §330016(1)(L), Sept. 13, 1994, 108 Stat. 2147 ; Pub. L. 118–49, §13(d), Apr. 20, 2024, 138 Stat. 882 .)

### EDITORIAL NOTES

### AMENDMENTS

**2024**-Subsec. (a). Pub. L. 118–49 inserted "or, if such proceedings are before or ancillary to the Foreign Intelligence Surveillance Court or the Foreign Intelligence Surveillance Court of Review established by section 103 of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1803), imprisoned not more than ten years" before ", or both".

**1994**-Subsec. (a). Pub. L. 103–322 substituted "fined under this title" for "fined not more than $10,000".

**1976**-Subsec. (a). Pub. L. 94–550 inserted "(or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code)" after "under oath".

**031**

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| CARLOS VELASQUEZ,<br><br>Plaintiff,<br>vs.<br><br>AMAZON.COM SERVICES, INC.,<br><br>Defendant. | **ORDER DENYING "MOTION TO SHOW CAUSE FOR REFUSAL, ON RECUSAL"**<br><br>**Case No. 2:25CV00674 DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Plaintiff Carlos Velasquez's "Motion To Show Cause for Refusal, on Recusal."[1] Plaintiff requests that another judge determine whether the undersigned judge must recuse under 28 U.S.C. § 144. The court denies Plaintiff's motion.

Section 144 states that when a party "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."[2] Procedurally, however, the judge against whom an affidavit of bias is filed may determine the affidavit's timeliness and sufficiency.[3] While making an initial determination of the facial sufficiency of the affidavit, the judge must not determine the truth or falsity of the facts stated therein.[4] Here, without

---

[1] ECF No. 19.

[2] 28 U.S.C. § 144.

[3] *See, e.g., Berger v. United States*, 255 U.S. 22, 32–34, (1921); *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978); *Hall v. Burkett*, 391 F. Supp. 237, 240 (W.D. Okla. 1975).

[4] *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976); *Azhocar*, 581 F.2d at 738.

considering the truth or falsity of any facts stated in Plaintiff's accompanying "Victim's Affidavit,"[5] the court finds that the affidavit is insufficient to justify having another judge decide the motion.

To demonstrate that a judge should recuse under Section 144, "an affidavit of bias and prejudice must be timely, sufficient, made by a party, and accompanied by a certificate of good faith of counsel."[6] Importantly, "the mere fact that a party has filed a § 144 motion, accompanied by the requisite affidavit and certificate of counsel, does not automatically result in the challenged judge's disqualification."[7] "Rather, the statute only requires recusal upon the filing of a timely and sufficient affidavit."[8]

In this case, Plaintiff has not provided a certification that his accompanying Affidavit and the substantive factual allegations have been filed in good faith.[9] Similarly, in Plaintiff's previously filed "Affidavit on Conditions for Recusal of Members of the United States District Court for the District of Utah: Complaint against Hon. Dale Kimball, Bias of the Judge Against the Law,"[10] he also failed to certify that the substantive factual allegations were filed in good

---

[5] *See* ECF No. 19-1.

[6] *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987) (per curiam).

[7] *Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 77 (D.D.C. 2010); *see also United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).

[8] *Robertson*, 691 F. Supp. 2d at 77 (internal quotation marks omitted).

[9] *Western Watersheds Project v. Interior Board of Land Appeals*, 434 F. Supp. 3d 1257, 1261 (D. Utah 2020).

[10] ECF No. 11. The court construed this "Affidavit" as a motion to recuse and denied it on October 8, 2025. *See* ECF No. 18.

**034**

faith. Courts have routinely concluded that failure to comply with this requirement is grounds for denying the motion.[11]

As the court has previously stated, "[a] trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true."[12] The undersigned judge will not recuse from this case because there is no valid reason to recuse, and thus there is a duty not to recuse. Any additional motions seeking recusal will be summarily denied.

While not relevant to the instant motion, the court emphasizes, again, that "the mere fact that a judge has previously expressed himself on a particular point of law is not sufficient to show personal bias or prejudice."[13] And adverse rulings by a judge are not grounds for disqualification.[14] Stated another way, a litigant seeking to disqualify a judge must allege personal rather than judicial bias.[15] Moreover, motions alleging bias and prejudice on the part of a judge that establish simply that the affiant does not like a particular judge are not adequate to require recusal.[16]

---

[11] *United States v. Miller*, 355 F. Supp. 2d 404, 405–06 (D.D.C. 2005); *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 54, 60 (D.D.C. 2010); *Burt v. First Am. Bank*, 490 A.2d 182, 187 (D.C. 1985); *United States v. York*, No. 86-CR-315, 1988 WL 105342, at *1 (N.D. Ill. Sept. 20, 1988).

[12] *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).

[13] *Id.*

[14] *Id.* at 857-858 (citing *Martin v. United States*, 285 F.2d 150 (10th Cir. 1960), *cert. denied*, 365 U.S. 853 (1961)).

[15] *Id.*

[16] *Id.* (citing *United States v. Goeltz*, 513 F.2d 193 (10th Cir. 1975), *cert. denied*, 423 U.S. 830 (1975)).

Plaintiff had also filed a motion for an extension of time to file a response to Defendant's Motion to Dismiss. On October 21, 2025, Defendant filed a response indicating that it did not oppose Plaintiff's request for an extension.[17] Nevertheless, Plaintiff filed his response on October 23, 2025, so his request for an extension of time is now moot.

Accordingly, IT IS HEREBY ORDERED that Mr. Velasquez's "MOTION TO SHOW CAUSE FOR REFUSAL, ON RECUSAL" [ECF No. 19] is DENIED, and his Motion to Extension of Time to File Response is [ECF No. 21] is DENIED AS MOOT.

DATED this 28th day of October 2025.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[17] ECF No. 25.

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| CARLOS VELASQUEZ,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM SERVICES INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 2:25CV00674 DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Amazon.com Services LLC's ("Amazon" or "Defendant")[1] Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion"). The court has carefully considered the Complaint, the memoranda filed by the parties, and the applicable case law and has determined that oral argument would not materially assist the court in deciding this motion. Now being fully advised, the court issues the following Memorandum Decision and Order granting Amazon's Motion to Dismiss.

While Plaintiff argues that Defendant's Motion is "premature," "improper and frivolous" "violates Rule 11(b)(2)," and violates "Rule 11(b)(1),[2] Plaintiff is simply wrong. He appears to misunderstand the basis and purpose of the Motion, as well as the legal standard that applies. Rule 12(b)(6) of the Federal Rules of Civil Procedure specifically provide for such a motion, which assumes that Plaintiff's factual allegations are true and tests whether a plaintiff has stated a viable cause of action.

---

[1] Defendant has pointed out that Plaintiff's employer, and the correct defendant in this action, is Amazon.com Services LLC—not Amazon.com Services Inc.

[2] ECF No. 26, Pl.'s Response ¶¶ 5, 6, 49, 53.

1

## BACKGROUND

Plaintiff Carlos Velasquez is proceeding pro se. His Complaint is difficult to decipher, and the factual bases of his various legal claims are not clear, but the court has tried its best to liberally construe his Complaint. In a nutshell, Plaintiff appears to assert that after working at Amazon for over four years, he resigned from his position in July 2023 because he disagreed with and complained about his disciplinary warnings and performance reviews, and he takes issue with not having been selected for a technical training program.

Plaintiff appears to pursue causes of action for (1) breach of contract; (2) harassment, discrimination, retaliation and/or hostile work environment, premised on criminal stalking statutes; (3) tortious interference; (4) fraudulent misrepresentation; (5) intentional infliction of emotional distress ("IIED"); and perhaps (6) negligence.

Despite the legal jargon and the lack of coherence in the Complaint, Defendant, in its motion, has done a commendable job of parsing through the relevant factual allegations and the causes of action that Plaintiff appears to assert. Accordingly, the court has relied heavily on Defendant's statement of facts that appear to be relevant to the causes of action that Plaintiff is likely attempting to pursue.

## RELEVANT FACTS DISCERNED FROM COMPLAINT

Plaintiff began his employment with Amazon as a temporary Part-Time Associate at a

2

143

**039**

"DUT1" in Salt Lake City, Utah.[3] He was onboarded on April 21, 2019, and promoted to Level 3

Yard Marshall and Process Assistant after June 25, 2021.[4] Plaintiff alleges that in late 2021,

several managers "engaged in a conspiracy to issue *false statement* [sic] respecting the

Plaintiff" and "refused to hear facts" regarding unidentified "inciden[t]s."[5] Amazon then

purportedly issued disciplinary coachings to Plaintiff in November or December 2021 (for gross

insubordination) and false[ly] report[ed] four separate disciplinary instances on dates 5/29,

5/31, 6/8, and 6/9."[6] Amazon then allegedly issued another coaching in June 2022 for "[f]ailure

to adhere to stand

work guidelines" on June 13, 22 and 27, 2022.[7]

Plaintiff applied for the Amazon Technical Academy ("ATA") on or around July 6, 2022.[8]

He was "made aware during the interim period," however, "that if he was not in good standing,

[he] would not be considered eligible for this training program."[9] Plaintiff was allegedly denied

admission to the ATA.[10] In September or October 2022, Plaintiff's manager Adrian Caldera

supposedly "demanded from the Plaintiff that he admit his own behavior was bad, and even

fatally unpopular, and to present that admission to subordinates as a self-improvement

---

[3] ECF No. 1, Compl. ¶ 12.

[4] *Id.*

[5] *Id.* ¶¶ 15, 16 (emphasis in original).

[6] *Id.* ¶¶ 36, 49, 51.

[7] *Id.* ¶ 53.

[8] *Id.* ¶¶ 176, 178.

[9] *Id.*

[10] *Id.* ¶ 181.

3

interrogatory."[11] Caldera "repeatedly sought to divest the Plaintiff of the merit of his

*experience.*"[12] On December 10, 2022, Plaintiff claims to have filed an "'Ethics Point'"

disciplinary complaint "citing harassment, disciplinary fraud, and character assassination . . . as

part of a greater movement."[13] This complaint did not base any of the allegations on being in a

protected classification.[14] On December 18, 2022, Plaintiff claims that Amazon issued Plaintiff a

First Written warning based on "off-color statements" Plaintiff allegedly made on November 23,

2022.[15] The warning also noted Plaintiff's performance failures (coding errors) on November

28, 29, and 30, 2022.[16] Plaintiff acknowledged these errors, and Amazon issued a Final Written

warning.[17]

In January and/or February 2023, Plaintiff claims to have filed another Ethics Point

complaint(s) after his managers "executed a hostile takeover of the Plaintiff's assigned duties,

while simultaneously discriminating against other associates."[18] Again, Plaintiff did not state

that any of the allegations were based on being in a protected classification.[19] On March 10,

2023, Plaintiff alleges that he appealed his Final Written warning.[20] In the course of his appeal,

---

[11] *Id.* ¶ 18.

[12] *Id.* ¶ 19 (emphasis in original).

[13] *Id.* ¶ 61.

[14] *Id.*

[15] *Id.* ¶ 92.

[16] *Id.* ¶ 99.

[17] *Id.* ¶¶ 101, 103.

[18] *Id.* ¶¶ 104, 138.

[19] *Id.*

[20] *Id.* ¶¶ 130-131.

4

**041**

Plaintiff described his "unrelated independent civil litigation ACTIVE during this time, which does require an enormous level of effort," resulting in "holding back to back 80 to 100 work weeks."[21]

Following a teleconference, Amazon purportedly "rescinded the 'Final Written Warning.'"[22] On March 15, 2023, Plaintiff's managers "initiated a process to attempt to terminate the Plaintiff" by issuing another "First Written" warning.[23] In response to this discipline, Plaintiff admitted that he had previously "use[d] some sensitive language" but had been "under some more high-level stress which may have contributed to the oversight."[24]

On May 6 and/or 10, 2023, Plaintiff claims that he "complain[ed] for the last time," this time regarding a positive recommendation given to a manager leaving Amazon who Plaintiff felt had engaged in "'Intentional Mismanagement'. . . sufficient to constitute 'Stalking' under Utah law."[25] Amazon allegedly investigated the complaint and did not find any violation of policy or standards of conduct.[26] On July 11, 2023, Plaintiff "dispatched a 'Notice of Legal Intent,'" presumably regarding his intent to file the instant lawsuit.[27] Plaintiff's security token was then

---

[21] *Id.* ¶¶ 140-142.

[22] *Id.* ¶ 146.

[23] *Id.* ¶ 148.

[24] *Id.* ¶ 150.

[25] *Id.* ¶¶ 156-157, 168.

[26] *Id.* ¶ 168.

[27] *Id.* ¶ 171.

allegedly revoked sometime thereafter.[28] Plaintiff resigned from his employment at Amazon on July 24, 2023.[29]

## LEGAL STANDARD

Because Plaintiff appears pro se, the court has "liberally construe[d] his filings" but it "will not act as his advocate."[30] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to make the claim "plausible on its face."[31] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged.[32] In reviewing a motion to dismiss, the court assumes the truth of "all well-pleaded facts in the complaint, and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiffs."[33] "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[34] Courts therefore disregard legal conclusions masquerading as factual allegations.[35]

---

[28] *Id.* ¶ 172.

[29] *Id.* ¶ 12.

[30] *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

[31] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[33] *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

[34] *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[35] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) ("[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable.").

**043**

## DISCUSSION

The court will discuss Plaintiff's causes of action ((1) breach of contract; (2) harassment,

discrimination, retaliation and/or hostile work environment, which appears to be premised on

criminal stalking statutes; (3) tortious interference; (4) fraudulent misrepresentation; (5)

intentional infliction of emotional distress ("IIED"); and (6) negligence) in turn.

### I.    Breach of Contract

"Under Utah law, '[t]he elements of a prima facie case for breach of contract are (1) a

contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other

party, and (4) damages.'"[36] To properly state a claim, the party must allege sufficient facts to

support each of the foregoing elements.[37] Plaintiff, however, has not done so.

Plaintiff claims that because Amazon employees "sign a code of conduct," they "are

bound to an 'At-Will' contract."[38] But he then goes on to quote "Amazon's At Will

Employment" policy, which expressly rejects any finding of a contract between Amazon and its

associates:

> Employment at Amazon is not for any specified length of time, *and both the*
> *associate and the company have the right to end the employment relationship*
> *at any time, with or without cause and with or without prior notice or warning.*
> Only Amazon's general counsel and chief financial officer have authority to bind
> the company to policies or agreements that conflict with this policy of at-will

---

[36] *Premier Sleep Solutions, LLC v. Sound Sleep Med., LLC*, No. 2:20-cv-00062-JNP-JCB, 2021 WL 1192579, at *3 (D. Utah March 30, 2021) (quoting *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230-31 (Utah 2014)).

[37] *Id.*

[38] ECF No. 1, Compl. ¶ 192.

employment. Any such exception must be in a written agreement signed by Amazon's general counsel or chief financial officer.[39]

Regardless of whether Plaintiff believes that Amazon failed to follow its own internal policies,[40] he has not alleged any facts that would show a binding contract existed between the parties, much less that Plaintiff performed his obligations and Amazon breached the contract instead.[41] Thus, Plaintiff has not sufficiently alleged that there was an actual contract between Plaintiff and Amazon, no breach could have occurred, and this claim must be dismissed.[42]

## II. Hostile Work Environment, Discrimination, or Retaliation

Plaintiff repeatedly alleges that his supervisors harassed, discriminated, and retaliated against him. Plaintiff, however, does not state any such claim as a matter of law because he premises his claim(s) on "criminal stalking" allegations, not on any protected status.[43] Criminal statutes do not provide for a private cause of action and also cannot be used to state a claim for

---

[39] *Id.* ¶ 193 (emphasis added) (quoting Exhibit 30 thereto at 8 ("At Will Employment")); *Abbott v. BNSF Ry. Co.*, 383 F. App'x 703, 709 (10th Cir. 2010) (determining that "at will" language in the Code of Conduct indicates the employer's intent to not bind itself to a contract).

[40] ECF No. 1, Compl. ¶¶ 209-210.

[41] *See Gardner v. Deseret Mut. Benefit Admins.*, No. 2:14-CV-00602, 2016 WL 2588165, at *6 (D. Utah May 4, 2016) (no contract where employee manual clearly disclaimed contractual liability) (citing *Tomlinson v. NCR Corp.*, 345 P.3d 523, 529 (Utah 2014))).

[42] *Lee v. Univ. of New Mexico*, 449 F. Supp. 3d 1071, 1145 (D.N.M. 2020) (dismissing the breach of contract claim because no contract existed between the plaintiff and defendant – the defendant's policies and procedures were just guidelines and lacked the necessary promissory language to create contractual obligations)

[43] ECF No. 1, Compl. ¶ 223. Plaintiff confirms in his Response to the Motion that stalking is the cause of the "coerced resignation consistent with breach of contract." ECF No. 26, Resp. to Motion at ¶¶ 15, 23, 34, 39, 41, 45, 48.

8

hostile work environment, discrimination or retaliation.[44] If Plaintiff intended to plead a claim for hostile work environment, discrimination, or retaliation, then he would need to allege membership in a protected classification under Title VII of the Civil Rights Act of 1964 ("Title VII"),[45] the Americans with Disabilities Act ("ADA"),[46] or the Age Discrimination in Employment Act ("ADEA").[47] But Plaintiff has made no such allegations: he does not identify his race or age, any disability, or any other protected classification, nor does he make any complaint about discrimination or harassment. Plaintiff has therefore failed to support a claim for hostile work environment, discrimination, or retaliation.

To the extent Plaintiff attempts to plead a separate claim for constructive discharge, it cannot stand as a freestanding cause of action. Constructive discharge constitutes an adverse employment action—an element of an employment discrimination or retaliation claim, not an independent claim in and of itself.[48]

Moreover, even if Plaintiff had made the requisite allegations for hostile work environment, discrimination, or retaliation, he has failed to allege that he exhausted the

---

[44] *See Semper v. Bessent*, 2025 WL 2046427, at *3 (10th Cir. July 22, 2005) ("criminal statutes do not provide a private cause of action" (citing *Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 273 (10th Cir. 2002)).)

[45] 42 U.S.C. § 2000e et seq.; *see* 42 U.S.C. § 2000e-2(a)(1) (prohibiting employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," including sexual harassment based on gender (emphasis added)).

[46] 42 U.S.C. § 12101 et seq. (prohibiting discrimination on the basis of disability).

[47] 29 U.S.C. § 621 et seq. ("ADEA").

[48] *See, e.g., Rivero v. Bd. of Regents of Univ. of New Mexico*, 950 F.3d 754, 761 (10th Cir. 2020) (constructive discharge is an "adverse employment action" sufficient to support an employment discrimination claim under ADA).

9

**046**

administrative remedies that are a prerequisite for bringing any protected status claim. Claims

for discrimination, harassment, and retaliation under Title VII, the ADA, and the ADEA require

that a plaintiff exhaust administrative remedies before filing suit.[49] Accordingly, his claim(s) for

hostile work environment, discrimination, or retaliation must be dismissed.

### III. Tortious Interference

To state a claim for tortious interference with a contract, Plaintiff must show (1) that the

defendant intentionally interfered with the plaintiff's existing or potential economic relations;

(2) for an improper purpose or by improper means; and (3) causing injury to the plaintiff.[50]

Inherently, a party must have sufficiently alleged a breach of a contractual obligation.[51] There

is, however, a presumption that all employment relationships entered into for an indefinite

period of time are at-will.[52]

As an at-will employee, and as discussed above, Plaintiff did not have an employment

contract with Amazon that could be subject to a tortious interference claim.[53] In addition,

---

[49] *See, e.g.*, *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011) (citing 29 U.S.C. § 626(d)(1)(B)) (The law provides that no civil action may be commenced unless "the would be plaintiff first files a grievance with the appropriate administrative agency – and does so 'within 300 days after the alleged unlawful practice occurred.'").

[50] *Superior Water and Air, Inc. v. Puronics, Inc.*, No. 2:07CV838 DAK, 2008 WL 2627467, at *3 (D. Utah June 30, 2008).

[51] *1600 Barberry Lane 8 LLC v. Cottonwood Residential OP LP*, 2019 UT App 146, ¶ 21, 449 P.3d 949, 957.

[52] *Ray v. Wal-Mart Stores, Inc.*, 359 P.3d 614, 620 (Utah 2015); *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989).

[53] *Zoumadakis v. Uintah Basin Med. Ctr., Inc.*, 2005 UT App 325, ¶ 9, 122 P.3d 891, 895 (trial court properly dismissed cause of action for tortious interference with employment contract because plaintiff was an at-will employee, without an employment contract.).

10

Plaintiff's claim suggests that Amazon could somehow tortiously interfere with its own contract, which is not possible.[54]

Indeed, Plaintiff seems instead to base his tortious interference claim on Amazon's denial of his admission to the ATA training program, akin to a failure-to-promote claim that would arguably and more properly fall under Title VII, the ADA, or the ADEA, which Plaintiff has failed to plausibly plead or exhaust, as discussed above.[55] As such, Plaintiff has failed to properly plead a tortious interference claim.

## IV. Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation under Utah law, Plaintiff must allege (1) that a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false; or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation; (5) for the purpose of inducing the other party to act upon it; and (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; and (9) to that party's injury and damage.[56]

Here, Plaintiff fails to allege what false representation was made and what action he took in detrimental reliance thereupon. At most, it appears Plaintiff objects to Amazon's

---

[54] *See SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1082 (10th Cir. 2018) (tortious interference claim requires interference of third party).

[55] *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1216 (10th Cir. 2022) (dismissing failure to promote claim under Title VII).

[56] *Chappell v. SkyWest Airlines, Inc.*, No. 4:21-cv-00083-DN-PK, 2021 WL 5882256, at *1 (D. Utah Dec. 13, 2021) (quoting *Cardon v. Jean Brown Research*, 327 P.3d 22, 24 (Utah Ct. App. 2014).

11

reviews of his performance and discipline arising from Plaintiff's conduct at work. Amazon's

assessment of Plaintiff's performance and conduct are inherently opinions, not facts, and

Plaintiff does not describe any detrimental action that he took because he relied on those

reviews or disciplinary actions. Plaintiff's claim thereby fails as the pleadings do not properly

allege the essential elements for a fraudulent misrepresentation claim.

## V. Intentional Infliction of Emotional Distress

Finally, Plaintiff suggests a claim for "vicarious infliction of emotional distress."[57] As

"vicarious infliction" does not exist as a claim for damages, the court has construed this claim as

one for intentional infliction of emotional distress ("IIED"). An IIED claim under Utah law

requires that a plaintiff show that (1) the defendant's conduct is outrageous and intolerable; (2)

the defendant intends to cause emotional distress; (3) the plaintiff suffers severe emotional

distress; and 4) the defendant's conduct proximately causes plaintiff's emotional distress.[58]

As an initial matter, none of the alleged conduct by Plaintiff is sufficiently "outrageous"

as a matter of law to state an IIED claim. Outrageous conduct "is conduct that evokes outrage

or revulsion; it must be more than unreasonable, unkind or unfair."[59] Additionally, conduct is

not outrageous simply because it constitutes an "insult," "indignity," or act that is "definitely

inconsiderate and unkind."[60] Conduct is also not outrageous because it is "unreasonable,

---

[57] ECF No. 1, Compl. ¶ 10.

[58] *Odunze v. Lake Effect*, No. 2:24-cv-00341-DBB-CMR, 2025 WL 756924, at *2 n.2 (D. Utah Jan. 17, 2025).

[59] *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 536 (Utah 2002).

[60] *Ankers v. Rodman*, 995 F. Supp. 1329, 1336 (D. Utah 1997).

12

unkind, or unfair."[61] At most, Plaintiff alleges that Amazon disciplined him for problematic

behavior—at least some of which he admitted—and criticized his performance. These

allegations do not rise to the level of "outrageous" and "intolerable" for purposes of an IIED

claim.[62] Nor has Plaintiff alleged any facts that would show Amazon intended to harm him.[63]

Plaintiff therefore cannot prevail on his IIED claim.

## VI. Negligence

To the extent Plaintiff was attempting to state a claim of negligence against Defendant,

that claim also fails. Under Utah law,"[t]he essential elements of a negligence action are: (1) a

duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the

causation, both actually and proximately, of injury; and (4) the suffering of damages by the

plaintiff."[64] The existence of a duty is a matter of law,[65] and "[i]f the district court determines

that the defendant owed no duty to the plaintiff, 'there can be no negligence as a matter of

law.' "[66] Plaintiff has not set forth any facts in his Complaint or cited any case law in his

Response Memorandum that could possibly be construed to give rise to a duty that Defendant

---

[61] *Crowe v. SRR Partners, LLC*, 632 F. Supp. 3d 1233, 1242 (D. Utah 2022).

[62] *Id.* (allegation that former employer terminated the plaintiff while she was fighting cancer was not outrageous conduct, as required to state an IIED claim, although such conduct may have been unreasonable, unkind, or unfair.)

[63] *See Odunze*, 2025 WL 756924 at *2 n.2.

[64] *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985).

[65] *Torrie v. Weber Cnty.*, 309 P.3d 216, 220 (Utah 2013)

[66] *Crossgrove v. Stan Checketts Properties, LLC*, 344 P.3d 1163 (Utah 2015) (quoting *Tallman v. City of Hurricane*, 985 P.2d 892 (Utah 1999)).

**050**

owed to Plaintiff in this situation. Accordingly, any possible claim for negligence must be dismissed.

## VII. Dismissal with Prejudice

Plaintiff has not sought leave to amend his complaint to allege facts that would support his purported causes of action or to allege facts that would support other causes of action. Because he has not sought to amend his complaint, the court need not address whether permitting the filing of an amended complaint would be futile, and the court dismisses the action with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [ECF No. 15] is GRANTED. Plaintiff's action is dismissed with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Judgment will be entered accordingly.

DATED this 14th day of November 2025.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CARLOS VELASQUEZ, | **JUDGMENT IN A CIVIL CASE** |
| **Plaintiff,** | |
| VS. | **Case No. 2:25CV00674 DAK** |
| **AMAZON.COM SERVICES INC.,** | **Judge Dale A. Kimball** |
| **Defendant.** | |

Pursuant to the Memorandum Decision and Order Granting Defendant's Motion to Dismiss, dated November 14, 2025, Plaintiff Carlos Velasquez's action is dismissed with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DATED this 14th day of November 2025.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

1

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CARLOS VELASQUEZ, **Plaintiff,** vs. **AMAZON.COM SERVICES INC.,** **Defendant.** | **ORDER** **Case No. 2:25CV00674 DAK** **Judge Dale A. Kimball** |

This court dismissed this action and entered judgment on November 14, 2025.[1] Yet, Mr. Velasquez has since filed "Objections"[2] and a "Motion for Discretionary Review for Fraud on the Court."[3] Neither filing is recognized under the Federal Rules of Civil Procedure, but the court has construed both filings as motions for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure. Plaintiff, however, has not provided any meritorious argument to justify reconsideration under Rule 60(b), and therefore the court declines to reconsider its previous rulings.

Accordingly, Plaintiff's Objection [ECF No. 38] is OVERRULED, and his Motion for Discretionary Review [ECF No. 43] is DENIED. Because this action has been dismissed and judgment has been entered against Plaintiff, this case is closed. Any document emailed or otherwise sent to the court by Plaintiff will be lodged in the docket as correspondence. The

---

[1] ECF Nos 36 & 37, respectively.
[2] ECF No. 38.
[3] ECF No. 43.

1

court will not respond to any future filings by Plaintiff in this case, and Defendant need not

respond to any filing by Plaintiff unless specifically directed to do so by the court.

DATED this 16th day of December 2025.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

2

056

FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**November 19, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

| | |
|---|---|
| CARLOS VELASQUEZ, | |
| Plaintiff - Appellant, | |
| v. | No. 25-4145 |
| AMAZON.COM SERVICES, INC., | (D.C. No. 2:25-CV-00674-DAK-CMR) |
| Defendant - Appellee. | (D. Utah) |

**ORDER**

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **FEDERICO**, Circuit Judges.

This matter is before us sua sponte to consider the court's jurisdiction over this appeal. *See Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1223 (10th Cir. 2012) (this court has "an independent duty to examine [its] own jurisdiction").

Appellant Carlos Velasquez filed two motions seeking to have the district court judge disqualified and/or recused. [ECF Nos. 11, 19]. Those motions were denied, and Mr. Velasquez appealed. [ECF Nos. 18 (denying ECF No. 11); 27 (denying ECF No. 19); 29 (notice of appeal)].

We entered an order directing Mr. Velasquez to explain the basis for this court's jurisdiction over this appeal. We have before us his response to that order. Upon consideration of that response, the district court docket, and the applicable law, we conclude that we lack jurisdiction over this appeal for the following reasons.

246

Case 2:25-cv-00674-DAK    Document 45-1    Filed 01/05/26    Page 22 of 26    PageID
Appellate Case: 26-4000    Document: 662    Date Filed: 02/05/2026    Page: 247

Appellate Case: 25-4145    Document: 13    Date Filed: 11/19/2025    Page: 2

Interlocutory orders denying a motion to recuse and/or disqualify are not immediately appealable. *See, e.g., Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1259 (10th Cir. 2022); *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1499 (10th Cir. 1994).

Mr. Velasquez contends that 28 U.S.C. § 1292 provides us jurisdiction in this appeal. Not so. Section 1292 provides jurisdiction over orders related to injunctions, receiverships, and admiralty matters. Neither of the appealed-from orders dealt with an injunction, a receivership, or an admiralty matter. And, as noted above, we have specifically held that interlocutory orders denying a motion to recuse and/or disqualify are not immediately appealable. We are without jurisdiction to consider this appeal.

Finally, we deny Mr. Velasquez's *Motion to Stay Proceedings Pending Interlocutory Appeal on Justiciable Recusal* as moot.

**APPEAL DISMISSED.**

Entered for the Court

Per Curiam

2

Case 2:25-cv-00674-DAK    Document 45-1    Filed 01/05/26    Page 24 of 26    PageID
Appellate Case: 26-4000    Document: 669    Date Filed: 02/05/2026    Page: 249

Case 2:25-cv-00674-DAK    Document 35    Filed 11/13/25    PageID.559    Page 1 of 3
Appellate Case: 25-4145    Document: 2    Date Filed: 11/07/2025    Page: 1

FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

November 7, 2025

Christopher M. Wolpert
Clerk of Court

CARLOS VELASQUEZ,

Plaintiff - Appellant,

v.

AMAZON.COM SERVICES, INC.,

Defendant - Appellee.

No. 25-4145
(D.C. No. 2:25-CV-00674-DAK-CMR)
(D. Utah)

## ORDER

This matter is before the court on its own initiative following the opening of this appeal. A review of the district court docket has revealed a potential defect in this court's appellate jurisdiction. Specifically, it appears that appellant Carlos Velasquez seeks to appeal two different district court orders and it does not appear that either of those orders is a final decision within the meaning of 28 U.S.C. § 1291. As a result, the court is considering this appeal for summary disposition. *See* 10th Cir. R. 27.3(B).

**Mandamus**

Before the court addresses the potential defect in its appellate jurisdiction, the court notes that Mr. Velasquez's notice of appeal is titled *Plaintiff's Notice of Appeal on a Petition for Writ of Mandamus: Judicial Recusal.* (ECF No. 29.) Because Mr. Velasquez filed a document entitled *Notice of Appeal* and because the district court transmitted this matter to the Tenth Circuit as an appeal, the Tenth Circuit has opened an

Case 2:25-cv-00674-DAK   Document 45-1   Filed 01/05/26   Page 25 of 26   PageID
Appellate Case: 26-4000   Document: 672   Date Filed: 02/05/2026   Page: 250

Case 2:25-cv-00674-DAK   Document 35   Filed 11/13/25   PageID.560   Page 2 of 3
Appellate Case: 25-4145   Document: 2   Date Filed: 11/07/2025   Page: 2

appeal, rather than a mandamus proceeding. If Mr. Velasquez wishes to pursue mandamus relief, he must file a separate petition that fully complies with Federal Rule of Appellate Procedure 21 and Tenth Circuit Rule 21. The court will not treat Mr. Velasquez's *Plaintiff's Notice of Appeal on a Petition for Writ of Mandamus: Judicial Recusal* (ECF No. 29) as a petition for a writ of mandamus.

**Finality**

Generally, this court's jurisdiction is limited to review of final decisions. 28 U.S.C. § 1291. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute judgment." *Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 204 (1999) (internal quotations omitted). Put differently, "[a] 'final decision' within the meaning of § 1291 is normally limited to an order that resolves the entire case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 38 (2020).

Here, appellant sought to have the district court judge recused. The district court twice denied that relief. (ECF Nos. 18, 27.) Mr. Velasquez subsequently appealed. (ECF No. 29.)

The court first notes that Mr. Velasquez's case remains pending in the district court. It does not appear that the district court has entered any final order, decision, or judgment in this matter, since there is no order, decision, or judgment that has resolved the entire case.

Further, this court specifically has addressed the immediate appealability of a decision denying a motion to recuse. Such a decision is not subject to immediate

2

Case 2:25-cv-00674-DAK    Document 45-1    Filed 01/05/26    Page 26 of 26    PageID
Appellate Case: 26-4000    Document: 67-2    Date Filed: 02/05/2026    Page: 251

Case 2:25-cv-00674-DAK    Document 35    Filed 11/13/25    PageID.561    Page 3 of 3
Appellate Case: 25-4145    Document: 2    Date Filed: 11/07/2025    Page: 3

appellate review. *See, e.g., Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1259 (10th Cir. 2022); *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1499 (10th Cir. 1994).

It does not appear that the district court has entered any order that has ended this litigation on the merits. Rather, it appears that this action remains pending, and the district court case remains ongoing. Given the apparent lack of finality, it does not appear that appellate jurisdiction exists. Additionally, it appears Mr. Velasquez seeks to appeal the district court's prejudgment decision concerning recusal (as reflected in ECF Nos. 18 and 27); such a decision does not appear appealable before the district court has entered a final decision, order, or judgment.

Accordingly, on or before December 1, 2025, appellant may file a written response to this order setting forth any basis in law or fact for this court to exercise jurisdiction over this appeal. Mr. Velasquez may file only one response to this order; the court may not consider multiple responses. Any response must be limited to addressing the jurisdictional issues identified above; it must not address any other topic or issue.

If appellant chooses not to respond to this order on or before December 1, 2025, the court may dismiss this appeal without any additional notice. *See* 10th Cir. R. 42.1. Briefing on the merits is suspended pending further order of the court. *See* 10th Cir. R. 27.3(C).

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

3

251

062

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**April 26, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

CARLOS VELASQUEZ,

    Plaintiff - Appellant,

v.

STATE OF UTAH; UTAH
DEPARTMENT OF HUMAN SERVICES;
UTAH DIVISION OF AGING AND
ADULT SERVICES/APS; UTAH OFFICE
OF ADMINISTRATIVE HEARINGS;
GARY R. HERBERT, Utah Governor;
SEAN REYES, Utah Attorney General;
UTAH LEGISLATURE; UTAH OFFICE
OF LEGISLATIVE RESEARCH AND
GENERAL COUNSEL; THOMAS R.
VAUGHN, Utah Attorney of General
Counsel; NELS HOLMGREN, Utah
Division of Aging and Adult Services
Division Director; J. STEPHEN MIKITA,
Utah Assistant Attorney General (Adult
Protective Services); SONIA SWEENEY,
Utah Office of Administrative Hearings
Division Director; LAURA THOMPSON,
Utah Assistant Attorney General (Utah
Department of Human Services);
AMANDA SLATER, Utah Office of
Licensing Division Director; UNITED
STATES ADMINISTRATION OF
COMMUNITY LIVING,

    Defendants - Appellees.

No. 20-4087
(D.C. No. 2:20-CV-00205-DB)
(D. Utah)

**ORDER AND JUDGMENT***

---

    * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of

**064**

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.

Carlos Velasquez, proceeding pro se, appeals the district court's judgment dismissing his action for failure to state a claim on which relief may be granted. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's judgment. As to the dismissal of his claims against certain defendants, we affirm on the alternative ground that Velasquez's claims are barred by issue preclusion.

I.    **Background**

This is the second of two actions that Velasquez has filed in the district court related to certain administrative law proceedings in Utah. *See Velasquez v. Utah*, 775 F. App'x 420, 421 (10th Cir.) (noting the genesis of his first action), *cert. denied*, 140 S. Ct. 615 (2019). After these administrative law proceedings concluded, he filed suit in Utah state court asserting his original claims and challenging the fairness of the administrative law proceedings and the constitutionality of several Utah statutes and regulations. *See id.* Velasquez's state-court litigation proceeded through the trial court, the Utah Court of Appeals, and the Utah Supreme Court. *See id.*

> Unable to find success after exhausting his appeals in Utah state court, he
> sued the State of Utah and several state agencies in federal district court. In
> federal court he once again raised his constitutional claims from state court

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

**065**

while adding constitutional claims that the Utah Supreme Court sustained malice, refused to clarify the constitutional question, and refused to recognize evidence.

*Id.* (citation and internal quotation marks omitted).

The district court dismissed Velasquez's first action (*Velasquez I*) for lack of jurisdiction under the *Rooker-Feldman* doctrine,[1] concluding that Velasquez was asking the court to review decisions rendered in the Utah administrative law proceedings and by the Utah state courts. *See id.* We affirmed the district court's dismissal of *Velasquez I* for lack of jurisdiction, concluding that:

he appears to challenge decisions by the Utah state courts reviewing his state administrative law appeal. He claims that the Utah state courts violated his constitutional rights in the course of that litigation and seems to seek reversal of decisions he lost on the merits. This is precisely the type of suit that Rooker-Feldman prevents federal district courts from hearing. Having already raised his various objections in state court and failed, [he] has now repaired to federal court to undo the state-court judgment against him.

*Id.* at 422 (brackets and internal quotation marks omitted). The United States Supreme Court denied Velasquez's petition for a writ of certiorari.

Several months later, Velasquez filed this action in the district court against the State of Utah and several state agencies and officials (collectively the State Defendants), and the United States Administration for Community Living (*Velasquez II*). Upon screening the new complaint pursuant to 28 U.S.C. § 1915(e)(2), the district court held it was subject to dismissal under subsection

---

[1] *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

3

**066**

(e)(2)(B)(ii) because it failed to state a claim on which relief may be granted. The court construed the complaint in *Velasquez II* as originating from the same administrative law proceedings as the prior complaint in *Velaquez I* and as seeking to void those proceedings. It stated that "it appears that Plaintiff's complaint alleges that his civil rights were violated in the proceedings in the Administrative Case and that certain Utah statutes and legislation are unconstitutional." R. at 596. The court therefore held that Velasquez's claims against the State Defendants in *Velasquez II* were barred by claim preclusion because (1) there was a final judgment on the merits in *Velasquez I*; (2) the parties in *Velasquez II* were the same as in *Velasquez I* or were in privity with the parties in *Velasquez I*; and (3) the claims or legal theories in *Velasquez II* arose from the same transaction, event, or occurrence as the claims or legal theories in *Velasquez I* and Velasquez was attempting to relitigate issues that were or could have been raised in *Velasquez I*.[2]

Velasquez filed two post-judgment motions. In one motion he cited Federal Rule of Civil Procedure 60(d)(3) and alleged fraud on the court. His second motion sought reassignment of the case to a different district court judge. The district court denied both motions.

---

[2] The district court also dismissed Velasquez's claims against the United States Administration for Community Living for failure to state a claim on which relief may be granted because "his complaint [was] entirely devoid of any allegations concerning that defendant." R. at 601. Velasquez does not challenge that ruling on appeal. Nor does he argue the court erred in holding that amendment of his complaint would be futile.

4

## II. Discussion

We review de novo a dismissal under § 1915(e)(2)(B)(ii). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). To the extent that Velasquez raises any claim of error in the district court's denial of his post-judgment motions, we review those rulings for an abuse of discretion. *See United States v. Buck*, 281 F.3d 1336, 1342-43 (10th Cir. 2002) (reviewing denial of relief on ground of fraud on the court for abuse of discretion); *United States v. Mobley*, 971 F.3d 1187, 1195 (10th Cir. 2020) (reviewing denial of motion to recuse for abuse of discretion). Because Velasquez is proceeding pro se, we liberally construe his complaint and his appeal brief. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (complaint); *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998) (brief). But we do not act as his advocate. *See Hall*, 935 F.2d at 1110.

"Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits." *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997). "Claim preclusion requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).

Velasquez raises no meritorious claim of error on appeal. It is unclear whether he challenges the district court's holdings on any of the claim preclusion elements,

5

**068**

and if so, what his contentions are.[3] He appears to argue primarily that *Velasquez I* should not have been dismissed on *Rooker-Feldman* grounds. But that issue was conclusively decided by the district court in *Velasquez I* and affirmed on appeal by this court. Moreover, Velasquez's assertions of fraud on the court and judicial bias are patently without merit.

We nonetheless conclude that the district court erred in dismissing *Velasquez II* based upon claim preclusion. Although Velasquez has forfeited review of this error by failing to raise it in his appeal brief, *see Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007), we exercise our discretion to address it, *see United States v. McGehee*, 672 F.3d 860, 873 n.5 (10th Cir. 2012).

In holding that the first element of claim preclusion was satisfied, the district court concluded that *Velasquez I* had resulted in "a final judgment on the merits" because that case was dismissed "with prejudice." R. at 599.[4] But the judgment in

---

[3] For example, regarding a judgment on the merits in *Velasquez I*, Velasquez states that the district court "does not develop the first requirement" and he asserts that "[s]aid first requirement is conspicuous against a civil IFP *deficiency* termination." Aplt. Br. at 21. Regarding the "finality of *Velasquez I*," *id.* at 22, he discusses the three strikes provision in 28 U.S.C. § 1915(g), which applies only to dismissals of actions or appeals by prisoners. Although Velasquez mentions privity, he does not develop an argument of error regarding the district court's holding on identity of parties in both actions. And he asserts "there is no original cause to find complete precedence for *transactional* claim preclusion," *id.* at 19, but fails to develop an argument that the district court erred in holding that the claims in both actions arose from the same transaction, event, or occurrence.

[4] The district court purported to dismiss *Velasquez I* with prejudice after holding that amendment of the complaint would be futile. *See* Mem. Decision & Order of Dismissal at 5-6, *Velasquez v. Utah*, No. 2:18-cv-00728-DN (D. Utah Feb. 25, 2019), ECF No. 27. But "[a] denial of leave to amend to repair a jurisdictional

6

*Velasquez I* was not on the merits of Velasquez's claims. Rather, the district court dismissed that action for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See Velasquez*, 775 F. App'x at 421-22. And a dismissal for lack of jurisdiction does not have a broad res judicata effect. *See Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) ("[A] dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion . . . ." (internal quotation marks omitted)). Thus, the district court erred in applying claim preclusion to dismiss *Velasquez II*.

But a dismissal for lack of jurisdiction still precludes a plaintiff from relitigating that ground for dismissal. *See id.* at 1209-10 (stating "a dismissal for lack of jurisdiction . . . preclude[s] relitigation of the issues determined in ruling on the jurisdiction question," *id.* at 1209 (internal quotation marks omitted)); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (holding the preclusive effect of a dismissal for lack of standing "is one of *issue preclusion* (collateral estoppel) rather than *claim preclusion* (res judicata)"); 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4436 (3d ed., Oct. 2020 update) ("Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question unless preclusion is denied for some other

---

defect, even on futility grounds, does not call for a dismissal with prejudice. The two concepts do not overlap in those cases where, although amendment would be futile, a jurisdictional defect calls for a dismissal without prejudice." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

7

reason."). Because issue preclusion bars Velasquez's claims against the State Defendants in *Velasquez II*, we exercise our discretion to affirm the district court's dismissal of those claims on an alternative basis.[5]

The elements of issue preclusion are:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Matosantos Com. Corp.*, 245 F.3d at 1207 (internal quotation marks omitted). All four elements for the application of issue preclusion are satisfied in this case.

The first element is met because *Velasquez II* raised the same *Rooker-Feldman* issue as *Velasquez I*. The district court held that both actions originated from the same administrative law case and subsequent state-court litigation in Utah. Both complaints also alleged that Velasquez's civil rights had been violated in those prior proceedings and that certain state statutes were unconstitutional. Further, the court

---

[5] "[W]e treat arguments for *affirming* the district court differently than arguments for *reversing* it. We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). Thus, we must affirm the district court's judgment "if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason." *Id.* (internal quotation marks omitted). Moreover, Velasquez had the opportunity to address claim preclusion in the district court, and the doctrines of claim preclusion and issue preclusion are "closely related," *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990). Finally, issue preclusion presents a legal question. *See Bell v. Dillard Dep't Stores, Inc.*, 85 F.3d 1451, 1453 (10th Cir. 1996). Thus, the efficient use of judicial resources weighs against a remand for initial consideration by the district court.

construed the complaint in *Velasquez II* as seeking to void the Utah administrative proceedings. *See* R. at 596. Moreover, consistent with the district court's construction, Velasquez states in his appeal brief that, "if compared, the Opening Complaints from *Velasquez I* to this *Velasquez II* are largely the same question." Aplt. Br. at 17 (internal quotation marks omitted) (italics added).

A dismissal for lack of jurisdiction satisfies the second element—a judgment "on the merits"—if the jurisdictional issue was actually adjudicated in the previous action. *See Matosantos Com. Corp.*, 245 F.3d at 1209-10. As we have noted, the *Rooker-Feldman* issue was actually and finally adjudicated in *Velasquez I*.

The third element is met because Velasquez was the plaintiff in both actions.

And finally, Velasquez had a full and fair opportunity to litigate the *Rooker-Feldman* issue in *Velasquez I*. In particular, he challenged the district court's application of that doctrine in a post-judgment motion and he appealed the judgment to this court. *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (rejecting a due process challenge to dismissals on screening under § 1915(e)(2) based upon the "adequate procedural safeguards to avoid erroneous dismissals," including "a reasonable post-judgment opportunity to present . . . arguments to the district court and the appellate court"). Nor does Velasquez's disagreement with the *Rooker-Feldman* ruling in *Velasquez I* mean that he was denied a full and fair opportunity to litigate the issue in that case. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990).

9

## III.    Conclusion

The district court's judgment is affirmed.  The court's dismissal of Velasquez's claims against the State Defendants is affirmed on the alternative basis of issue preclusion.  Velasquez's application to proceed on appeal without prepayment of fees and costs is granted.

Entered for the Court

Nancy L. Moritz
Circuit Judge

073

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

April 26, 2021

Jane K. Castro
Chief Deputy Clerk

Mr. Carlos Velasquez
P.O. Box 58486
2255 East Sunnyside
Salt Lake City, UT 84158

RE:     **20-4087, Velasquez v. State of Utah, et al.**
        Dist/Ag docket: 2:20-CV-00205-DB

Dear Appellant:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

CMW/djd

**074**